ELLEN A. HANDLEY v. THE MISSOURI PACIFIC
RAILWAY COMPANY.

No. 11,359. (59 Pac. 271.)

1. EVIDENCE—*Opinion.* The opinion of a non-expert witness as to what was seen by another is not admissible as testimony.

2. RAILROADS—*Injury to Trespasser.* Where a trespasser goes under a train and upon a brake of a car in an attempt to steal a ride, no duty of the railroad company arises in his favor until he is discovered by some one in charge of the train, nor can a recovery be had for injuries caused by falling from his perilous position unless the company was guilty of wilful and wanton neglect of duty in not stopping the train and removing him after his peril was discovered.

3. ―――― *Testimony Insufficient.* Testimony examined, and held to be insufficient to show that such discovery was made or any ground of liability for the injury sustained.

Error from Greenwood district court; C. W. SHINN, judge. Opinion filed December 9, 1899. Affirmed.

*James Shultz,* for plaintiff in error.

*J. H. Richards, C. E. Benton, J. B. Clogston,* and *D. B. Fuller,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: On March 20, 1894, when the passenger-train of the Missouri Pacific Railway Company was about to leave Toronto, W. F. Blake, a young man fifteen years of age, went under the cars and climbed upon the trucks or cross-bars, with the purpose of stealing a ride, but before the train had gone 350 yards he fell down, his leg was crushed, and soon afterward he died as a result of the injury. His mother brought this action, claiming that the injury was due to the negligence of the company; that a colored porter employed by the company, who

was upon the train, knew of Blake's presence and perilous position, but that he did not signal the train to stop, nor make any effort to care for or save him; and she asked for damages in the sum of $10,000. Testimony was offered in favor of the plaintiff, but the court, holding it to be insufficient, sustained a demurrer to the evidence and gave judgment for the defendant.

A careful examination of the little testimony that was offered leads us to the conclusion that the plaintiff failed to establish a liability against the company. In going under the train and climbing upon the brakes of a car the young man was grossly negligent of his own safety. There is nothing aside from the reckless act itself to show a lack of intelligence or capacity, and the plaintiff avers that it was done with the intent to steal a ride. He put himself in a place of obvious danger, and he must have appreciated the peril and risk which he assumed. It is a general rule that if the person injured brought the mischief upon himself by his own neglect, or if the neglect contributed directly to produce the injury, there can be no recovery, although the defendant may have failed to exercise ordinary care.

Of course, the mere fact that one party is negligent furnishes no reason in itself why he should be punished for the negligent misconduct of another, and although Blake was clearly negligent, the company could not wilfully and wantonly inflict injury upon him and escape responsibility. Being a trespasser, however, and grossly negligent, no duty arose in his favor until his presence was discovered; and there can be no recovery unless, after discovering that he was in a perilous position, the company failed to use the means within its power to avoid injuring him.

If those in charge of the train were not aware of his presence under the car, nor that he was in a perilous position, there could have' been no culpable negligence on the part of the company. Two witnesses testified on the question, and one of them, named Wolf, stated that he saw Blake holding to one of the rods or brakes underneath the car, and that his feet were dragging; that there was a colored porter standing on the steps of the car holding the hand-rail and leaning out, watching the boy. The statement or opinion that he was "watching the boy" was stricken out by the court, and of this ruling complaint is made. It was competent for the witness to state the attitude of the porter, or the direction in which his eyes were turned, but he could not give his opinion as to what the porter saw or was watching. Who can say that a person looking upward is watching a bird in a tree, the smoke from a high chimney, or a passing cloud? When there are a number of things within the range of a person's vision, it is only conjecture or speculation to say that he saw any one of them merely because his eyes were turned in that direction. So, here, the porter may have been looking at the ties or track underneath, or at some of the trucks, rods, or other parts of the car. If the train crew had trouble with the wheels, and there was what is called a hot box, the porter may have been watching that. The witness was not an expert, nor was the opinion given upon a subject of expert testimony. A non-expert witness may give an opinion in connection with facts upon which it is founded where the matter to which the testimony relates cannot be reproduced or made palpable to the jury. No such exigency or necessity exists here, nor does the testimony fall within any of the exceptions

to the rule excluding non-expert opinions. With equal propriety the opinion of a witness might be taken as to whether another had heard certain words or sounds as that he had seen certain objects, and the supreme court of Indiana has held that the opinion of witnesses cannot be taken as to whether one heard certain words addressed to him in the hearing of the witness, but that it was for the jury to determine from evidence of the circumstances. (*Dyer v. Dyer*, 87 Ind. 13.)

Another witness, named Anderson, who was standing near the track, stated that he saw Blake under the car, and that his feet were not dragging, but that his body was supported by something, and only one leg was in sight as the train passed. He also testified that he saw a colored porter standing on the steps between the two coaches, looking toward the rear end of the train, as though he was looking underneath. The foregoing is the only testimony offered which it is claimed showed knowledge by any employee of the company that Blake was under the car. Not a word of testimony was produced to show that the conductor, engineer or any employee in direct charge of the train knew of Blake's presence, nor was there any testimony to show the scope of the duty or employment of the porter with respect to removing a trespasser from a train. It has been held that the act of a brakeman of a railroad company in removing a trespasser from a train is not to be regarded as the act of the company unless he was employed generally to remove trespassers or specifically to remove a particular one. (*Marion v. C. R. I. & P. R. Co.*, 59 Iowa, 428, 13 N. W. 415; *Towanda Coal Company v. Heeman*, 86 Pa. St. 418; *Planz v. Boston & Albany Railroad*, 157 Mass. 377, 32 N. E. 356, 17 L. R. A. 835.)

Assuming, however, that it was the duty of the porter to take steps to stop the train as soon as he discovered a trespasser under the car, we are compelled to hold that the testimony fails to show that such a discovery was made. It devolves upon the plaintiff to produce evidence which will establish a liability, and a conjecture or suspicion that some employee on the train may have known that a trespasser was stealing a ride is not sufficient to warrant a recovery. How the accident occurred was not developed. Blake was not forced from the train by any one, nor is there any claim that he was jolted off by the operation of the train. Certainly they were not running at a high rate of speed, as the train had only proceeded about 350 yards from the station when Blake was injured, and in that distance it was required to stop at the crossing of another railroad. It does not appear that he was injured before the stop was made for the crossing, and, as counsel suggests, he may have got off at the crossing to avoid a forcible removal and been injured while trying to get back upon the train as it started again. The distance from the station to the place of accident was so short that there was necessarily very little time in which to discover Blake, or, if he was seen, to stop the train and remove him. The testimony offered, however, does not amount to proof that he was seen at all by any employee of the company, and certainly does not show that he was wilfully or wantonly injured. Unless, as we have seen, the company was guilty of wilful or wanton neglect of duty in not stopping the train and removing Blake when his danger was discovered, no recovery can be had, and this not being shown the trial court ruled correctly in sustaining the demurrer.

The judgment is affirmed.

16—61 KAN.

DOSTER, C. J. (concurring specially) : I concur in the decision of this case, but not in that portion of the opinion which implies that it is not the duty of train brakemen or porters to remove trespassers from the train, and that the railroad company is not liable for the failure of such employees to care for trespassers in perilous positions about the cars.