No. 20,646.

CHARLES GAMBLE, a Minor, etc., *Appellee*, v. THE UNCLE SAM OIL COMPANY OF KANSAS, *Appellant*.

SYLLABUS BY THE COURT.

1. PERSONAL INJURIES—*Boy Trying to Board a Motor Truck—Motor Truck Not an "Attractive Nuisance."* An ordinary motor truck moving along a public street can not be regarded as an attractive or alluring vehicle to an intelligent boy about fifteen years old who is accustomed to the traffic of the streets, and the doctrine of the turntable cases is not applicable in an action brought by the boy to recover for injuries sustained while trying to board the moving truck.

2. SAME—*No Invitation for Boys to Board a Moving Truck.* The fact that the plaintiff and other boys had previously boarded or clung to the defendant's trucks did not amount to an invitation from the defendant to the plaintiff to board a moving truck, and evidence of that character was inadmissible in the case.

3. SAME—*Defendant Not Chargeable with Acts of Nonemployee.* Testimony that a person who chanced to be riding with the driver in charge of the truck and who was not an employee or agent of the defendant, waved his hand in the direction of the plaintiff did not tend to prove negligence on the part of the defendant and was not admissible.

4. SAME — *Plaintiff Trespassing — Duty of Motor Car Driver.* The plaintiff, an intelligent young man who was accustomed to street traffic, who undertook to board the defendant's motor car which was moving at a speed of from six to ten miles an hour, was a conscious trespasser and responsible for his own negligence unless the driver of the motor car wilfully and wantonly failed to protect him after he learned of his peril.

5. EVIDENCE—*Insufficient to Uphold Findings.* The evidence examined and it is held not sufficient to uphold the finding that defendant was negligent toward the plaintiff.

Appeal from Wyandotte district court, division No. 3; HUGH J. SMITH, judge. Opinion filed March 10, 1917. Reversed.

*Redmond S. Brennan, James F. Getty,* both of Kansas City, *Albert L. Wilson,* and *Mark T. Wilson,* both of Kansas City, Mo., for the appellant.

*John H. Atwood, Oscar S. Hill,* and *Arthur C. Popham,* all of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.:   Charles Gamble, a minor, sued the Uncle Sam Oil Company to recover damages for personal injuries sustained when he was run over by one of defendant's motor trucks.   Plaintiff recovered judgment for $10,000 and the defendant appeals.

The accident occurred in Kansas City, Kan., on Osage avenue, on the south side of which plaintiff in company with a companion was standing as the defendant's truck came eastward along the street past them at a rate of from six to ten miles per hour.   In the seat with the driver sat a boy named "Curley" Wilson, an acquaintance of plaintiff.   Remarking to his companion that he was going to get on the truck, plaintiff ran in pursuit of the truck and reached up and took hold of it with his hands, but he failed to get a good foothold and his feet slipped off.   Hanging thus by his hands, without succeeding in putting his feet on the running board or other part of the truck, it progressed about a block, and then plaintiff's hold gave way and he fell to the street in such a way that the right hind wheel of the truck passed over and crushed his right leg.   Shortly after he fell the truck was stopped, within twenty-two feet.   The injury necessitated the amputation of his leg. The truck was a large, heavy one, capable of carrying eighteen barrels or drums of oil.   The driver's seat was enclosed by a cab, at the left side of which was situated the steering wheel.   The floor of the cab was about thirty inches from the ground.   Immediately back of the cab was the body or bed of the truck which was wide enough to extend over the hind wheels, this being the space where the load was carried.   Its sides were made of large slats fastened to uprights. The footboard, which connected with the front fenders, extended only about as far as the rear edge of the cab, and at the end of the foot board was a tool box.   The testimony was in conflict as to the place on the truck where the plaintiff was

clinging, whether opposite the cab where he might have been seen by the driver, or farther back on the body of the truck, clinging to the slats in the side of the bed. The plaintiff testified that he was holding to the cab so that his head was opposite the passageway; that he shouted and told Wilson to tell the driver to stop; that Wilson spoke to the driver, but plaintiff did not know what he said. He further testified that the driver grinned at him, but that he did not know whether the driver knew he was in danger or not. The driver testified that he did not hear any one cry out to stop the truck and did not know the plaintiff was hanging on the truck until he heard his scream as he fell. Other testimony was to the effect that plaintiff caught hold of and was clinging to the truck back of the cab, about half way from the front of it. Upon this question the jury, who returned special findings, stated that plaintiff "caught hold of the cab of the truck." The jury also returned a finding that the driver knew that plaintiff was attempting to get on the truck for a sufficient length of time to have enabled him to stop the truck before the injury occurred; and finding No. 8 was as follows: "Did the driver of the truck do all that a prudent person could to stop the truck as soon as he knew some one was in danger? A. No." There was a further finding that the plaintiff had not been invited to board the truck by any of the defendant's employees, but that Wilson invited him to get on by waving to him. The age of plaintiff was fourteen years and ten months at the time of the injury. He was a boy of average intelligence, lived and worked in town, and was familiar with street traffic.

Error is assigned on the ruling of the court refusing to strike out the averment that the motor truck was peculiarly attractive to children of tender years and perilous to those who might be attracted to it or led to catch on and cling to it as it passed along the streets; and that this was known or should have been known by the defendant. The motion should have been sustained. The attractive nuisance doctrine can not be extended to include motor trucks nor made applicable to cases like this one. Motor trucks are in common use and no more attractive nuisances than are drays and other ordinary vehicles used for carrying persons and goods along the streets and

highways. (*Wilson v. Railway Co.,* 66 Kan. 183, 71 Pac. 282; see, also, *Somerfield v. Power Co.,* 93 Kan. 762, 145 Pac. 893.) The petition discloses that the plaintiff was nearly fifteen years of age, and it is not contended that he was lacking in intelligence nor that he was unaccustomed to the streets or the traffic upon them. The defendant's truck was of a kind that is in common use, it was being used for a common purpose and in the ordinary way, and no reason can be urged for applying the doctrine of the turntable cases to this one. The court not only refused to strike out the averments of the plaintiff suggested, but also refused to require the plaintiff to definitely state in what respect the truck was peculiarly attractive to children or the plaintiff. Testimony was received on this phase of the case, and the matter was kept before the jury until the evidence was closed. The court in its instructions finally told the jury that "the defendant has the right to use the public streets with the said truck and it was not an attractive nuisance while in active use." The jury were not directed to give no consideration to the testimony offered on the subject, and whether or not the statement of the court that the truck was not an attractive nuisance neutralized the prejudicial effect of the statements and evidence bearing upon the theory erroneously placed before the jury may be questioned.

Another averment in the petition which was challenged by a motion to strike and which was overruled is the subject of complaint. It was alleged and evidence was introduced tending to show that plaintiff and other children had been permitted to cling to and ride on the defendant's trucks previous to the accident in question. In the opening statement in behalf of the plaintiff the jury were told that the defendant had allowed boys openly and repeatedly to hang and ride upon its trucks, and that this negligent permission and practice had induced the plaintiff to attempt the hazardous thing of jumping upon this passing truck. Much testimony along this line was received over the objection of defendant, and its admission was error. It was decided in *Wilson v. Railway Co.,* supra, that "the fact that the plaintiff and other boys had previously jumped on and off the cars of the company, without remonstrance from the employees of the company, did not amount to an invitation from the company to plaintiff to hop

on and off its moving trains thereafter, nor make the company liable for an injury resulting from such reckless conduct." (Syl. ¶ 3.)   It is contended that the error was cured by an instruction given by the court "that the jury shall not consider any evidence as to the plaintiff or any other boys being upon the truck at any other time except as bearing, if it does bear, solely upon the question as to whether or not the driver saw the plaintiff and his position on the truck at the time and place of the alleged injury to plaintiff."   The instruction given narrowed the application of the evidence to the accident, but it is difficult to understand that the evidence was proper or threw any light on the question whether or not the driver saw the plaintiff or his position on the truck.   How far the erroneous evidence may have influenced the jury is not easy to determine, and it may well be doubted whether the effect of it was removed by the instruction quoted.

Another ruling along the same line was when the court permitted evidence to the effect that Wilson, who was riding on the truck, waved his hand to the plaintiff as the truck passed him.   This had a tendency to show that the plaintiff was invited to make the reckless attempt to get on the truck.   In the opening statement counsel for plaintiff said that Wilson, who was riding with the driver, motioned to the plaintiff to get on the truck, and that in response to that motion and on the strength of the practice of the defendant frequently repeated the plaintiff made the attempt.   When the evidence was offered defendant objected, saying that Wilson was not an employee of defendant and his act could not bind it, and also that his act could not be regarded as an invitation or binding upon the defendant unless Wilson was an employee of the defendant.   The objection was overruled, and although there was no proof or claim even that Wilson was an employee of the defendant nor any proof that the motion of Wilson, if made, was observed by the driver of the truck, the evidence as to the inviting motion was left with the jury.   It is not easy to say that the evidence was without prejudice and it should have been excluded.

One of the principal errors discussed is the lack of evidence to show that the driver of the truck, who was seated on the side of the truck opposite to the one to which the plaintiff was

Gamble v. Oil Co.

clinging, was aware of the position of the plaintiff and of the danger he was in before he dropped from the truck. The driver was proceeding along the street at a reasonable rate of speed and in a careful manner when the plaintiff undertook to board the truck. Being nearly fifteen years of age, intelligent and accustomed to the traffic of the streets, the plaintiff, in recklessly attempting to board the truck when it was going from six to ten miles an hour was a conscious trespasser. There was no excuse for an act so obviously rash and dangerous, and the driver, whose duty it was to keep a lookout ahead along a busy street, had no reason to anticipate that plaintiff would undertake such a foolhardy act. In one of his instructions the trial court told the jury that the driver "can not be required to keep a lookout in the rear and at the sides to prevent persons from recklessly attempting to climb on said truck after it had passed them in safety." According to numerous decisions the defendant owed the plaintiff, who was grossly negligent and a trespasser, no duty except not willfully or wantonly to injure him after learning of his presence and peril. His attitude in this case is about the same as that of one who attempts to catch a ride on a street car or hops upon a moving railway train.

In *Handley v. Railway Co.*, 61 Kan. 237, 59 Pac. 271, a boy fifteen years old undertook to steal a ride on a train and was injured, and it was decided that "being a trespasser, however, and grossly negligent, no duty arose in his favor until his presence was discovered; and there can be no recovery unless, after discovering that he was in a perilous position, the company failed to use the means within its power to avoid injuring him." (p. 238.) In that case, although there were employees in sight of the young man, and some testimony that his peril was obvious to people near him, a demurrer to the plaintiff's evidence was sustained.

In *Wilson v. Railway Co.*, 66 Kan. 183, 71 Pac. 282, a twelve-year-old boy was injured who was jumping upon and riding on the cars of a moving freight train. While he was on the train a brakeman looked and smiled at him, but said nothing and did not order him to leave. The case was disposed of on a demurrer to the plaintiff's evidence, and it was held that as he was familiar with moving cars and had sufficient

intelligence to appreciate the danger of getting on a moving train, he was a trespasser and was responsible for his own negligence, and that although the brakeman saw him and did nothing toward removing or protecting him the defendant was not guilty of wilful or wanton negligence toward the boy.

In *Mendenhall v. Railway Co.*, 66 Kan. 438, 71 Pac. 846, a young man fifteen years old paid a brakeman upon a train twenty-five cents and arranged with him to ride on the platform of a baggage car, and that he would get off the train when stops were made and would conceal himself so that the conductor could not see him. Through the alleged negligence of the defendant his feet were cut off, and in his action it was held that notwithstanding the knowledge and action of the brakeman the boy was a trespasser and the company owed him no duty except to avoid willful and wanton negligence. The ruling was made upon a demurrer to the facts alleged in the plaintiff's petition and upon the theory that willful negligence was not shown and therefore no recovery could be had.

The sufficiency of the evidence in behalf of plaintiff was challenged by a demurrer, and in defendant's brief attention is called to the fact that the allegations set forth by plaintiff himself show that plaintiff was a trespasser, and that plaintiff sought to avoid the effect of his gross negligence by invoking the application of the attractive nuisance rule and also his youth and immaturity. Neither of these can be held to relieve him from the consequences of his negligence, and he can not recover unless there is proof that the defendant willfully and wantonly neglected to protect him after learning that he was in danger. In answer to a question the jury stated that the driver knew the plaintiff was attempting to get on the truck during a sufficient time to have enabled the driver to stop the truck before plaintiff fell. This finding does not necessarily imply that the driver knew that the plaintiff was in danger nor that the driver wantonly drove on knowing that plaintiff was likely to fall and be injured. In answer to another question the jury stated that the driver did not do all that a prudent person could to stop the truck as soon as he knew some one was in danger. This answer and the general verdict include a finding that the driver was negligent toward the plaintiff. Does the evidence sustain the finding? There

is some testimony warranting the jury to find that the driver knew that the plaintiff was clinging to the truck. It appears that boys sometimes caught on and rode on the defendant's trucks as they passed along the streets, but the fact that plaintiff was holding to the side of the truck does not prove that he knew that plaintiff was in danger nor that the driver was willfully negligent toward the plaintiff. The driver was on the left side of the truck and in the cab, which was partially enclosed, while the plaintiff was holding to the right side of the truck. Assuming, as we must upon the record, that plaintiff was holding to the cab instead of to the middle of the truck, as some of the witnesses testified, it would appear that Wilson was sitting between the driver and the part of the truck to which plaintiff was holding. The driver might have seen that plaintiff was holding to the side of the truck, but from his position he would not necessarily know that plaintiff's feet were without support. Wilson could have seen that he was supported entirely by his hands, but his knowledge was not the knowledge of the driver nor of the defendant. Plaintiff testified that he yelled while he was holding to the truck, but the shout of a reckless boy, if heard by the driver, might have been regarded by him as a shout of triumph at his success in catching on instead of a signal that he was in danger. Plaintiff testified that he yelled at Wilson and told him to stop the truck and that Wilson spoke to the driver, but plaintiff did not know what Wilson said. He also said that he was in plain view of the driver during the time he was holding to the truck, but that when Wilson spoke to the driver he turned around and grinned or looked at plaintiff, but plaintiff stated that he did not know that the driver knew that he was in danger. The truck, which was going at a rate of from six to ten miles an hour, went only fifty feet after Wilson spoke to the driver and before plaintiff dropped from the truck. The proof that the driver grinned or looked at the plaintiff is not satisfactory evidence that the driver was conscious of the plaintiff's danger, who must have loosened his hands immediately after that time. At the rate of speed the truck was moving it would pass over the distance of fifty feet in a few seconds. The plaintiff did not speak to the driver nor did the

driver speak to him. The fact that he looked at the plaintiff does not prove that he learned of or understood the danger that plaintiff was in. If it be granted that the driver saw his face and the upper part of his body and observed that he was holding on with his hands, there is still nothing to disclose that there were any signs of distress in the plaintiff's face, and the plaintiff frankly stated that he did not know that the driver was aware that he was in any danger. He might have been looking toward plaintiff without noticing him or his plight.

In *Handley v. Railway Co.*, 61 Kan. 237, 59 Pac. 271, it was contended that a train porter was watching and looking at a trespasser at the time he was injured. It was decided that it was competent for a witness to state the direction to which the porter's eyes were turned, but the witness could not testify as to what the porter saw. It was said: "When there are a number of things within the range of a person's vision, it is only conjecture or speculation to say that he saw any one of them merely because his eyes were turned in that direction." (p. 239.) It was held there on a demurrer to the evidence that willful and wanton negligence of the defendant was not made out.

Again, the relations between the driver and the plaintiff appear to have been good, as the plaintiff testified that the driver had always been kind to him, and we find nothing in the testimony indicating that the driver had other than the kindest of feelings toward the plaintiff and the boys of his acquaintance. We are of opinion that the evidence does not establish willful or wanton negligence on the part of the driver toward the plaintiff.

We find nothing substantial in the other objections made by the defendant, but for the errors mentioned the judgment is reversed and the cause remanded for a new trial.

PORTER, J. (dissenting) : I concur in all that is said in the opinion, but dissent from the judgment ordering a new trial. In my opinion judgment should be ordered for the defendant as there is no evidence to sustain a finding of wantonness on the part of the defendant.