No. 30,410.

CLYDE MAYHEW, a Minor, by His Mother, MARY HELEN MAYHEW, *Appellee*, v. JAMES H. DECOURSEY, FRANK C. DECOURSEY and WILLIAM B. DECOURSEY, doing business as the DECOURSEY CREAMERY COMPANY, *Appellants*.

(10 P. 2d 10.)

Opinion filed April 9, 1932.

*James F. Getty*, of Kansas City, for the appellants.

*W. W. McCanles, F. M. Kennard* and *Walter J. Gresham*, all of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action for damages growing out of a collision of a truck with an automobile. Judgment was for the plaintiff. Defendants appeal.

The facts are as follows: Appellants operate a plant where they manufacture ice cream. As part of this business they delivered ice cream to various customers in Kansas City. To do this they operate a truck. The evidence in the case speaks of it as a ton-and-a-half truck. Appellee worked for appellants as a helper on this truck during the day from seven in the morning till six in the evening. From six in the evening the truck was operated by one man without any helper. On the day the injury occurred to appellee he had finished his work for the day and gone home. After he had cleaned up and had his supper he returned to the plant of appellants. Here there is a sharp conflict in the evidence. Appellee testified that Frank Harmon, his cousin, who drove the truck, asked him to

help load and to go with him to a swimming pool to do some work for the company. He also testified that the foreman of the plant saw him there helping Harmon and saw him get on the truck when it was driven away.

The foreman denied this and testified that when appellee came to the plant that night he told him to leave, since the company did not permit anyone to hang around who was not working. He testified that he told appellee he could not ride on the truck and that he did not know he was on it till after the accident. His testimony was —"he wanted to ride on the truck and I said, 'No, the foreman —I mean the boss—doesn't allow it.'" Frank Harmon, the driver of the truck, testified that when appellee came to the plant that night the night foreman told him that he was not allowed to have anybody hanging around, and that he did not allow anybody on the trucks; that soon after that appellee left. He testified that within a block or two of the plant, as he was starting on his trip, appellee flagged him down, and on account of his being a relative he stopped and picked him up.

This was all the testimony on that particular point. On that evidence the jury answered three special questions as follows:

"11. Did the injuries sustained by the plaintiff occur in the course of his employment as employee of the defendants? A. No.

"12. Had there been communicated to the plaintiff a rule of the defendants to the effect that no persons except the employees of the defendants should be permitted to ride upon their trucks? A. Yes, but not enforced.

"13. If you answer the last question in the affirmative, were the injuries sustained by the plaintiff the result of his violation of said rule? A. Yes."

One ground for reversal urged by appellants is that judgment should have been given for them on these special questions notwithstanding the general verdict. This question will not be dealt with, however, till we have examined the facts with reference to the accident.

The truck made the trip on which it was sent, and on the way back approached the intersection of Eighteenth street and Reynolds avenue in Kansas City, Kan. The truck was being driven east on Reynolds avenue. There is a stop sign on Reynolds avenue thirty feet back from the Eighteenth street property line. The city ordinance required all motor vehicles to come to a stop before crossing Eighteenth street. At this intersection Eighteenth street is sixty feet wide from property line to property line, and forty feet

from curb to curb. Reynolds avenue is sixty feet wide, with the pavement thirty feet wide. Eighteenth street has two street-car tracks on it. As the truck approached Eighteenth street there is a dispute as to whether the driver stopped. He says he did. Appellee says he did not. The jury found that he did not.

As the truck proceeded to cross Eighteenth street it reached a point where its hind wheels were on the east street-car track, or about two-thirds of the way across. At this point an Essex car, which was being driven south on Eighteenth street, collided with the truck, causing it to upset and injure appellee: There are many conflicts in the testimony and the jury answered special questions with reference to the accident, as follows:

"1. At the time of the accident in question, was the truck of the defendants struck and overturned by the Essex automobile driven by John Ruzich? A. No.

"2. If you answer the foregoing question in the affirmative, was the rear end of the truck of the defendants on the east street-car track on Eighteenth street when struck by the Essex car? A. Truck was on east car track.

"3. If you answer the foregoing question in the affirmative, state whether or not the defendants' truck had entirely cleared the west half of the pavement on Eighteenth street. A. Yes.

"4. If the Essex automobile driven by John Ruzich had been driven on the right-hand or west side of Eighteenth street at the time of the accident, would it have collided with the truck of the defendants? A. No.

"5. At what rate of speed was the Essex car being driven south on Eighteenth street as it approached Reynolds avenue? A. Twenty to twenty-five per hour.

"6. What, if any, precaution did the driver of the Essex car take for the safety of persons or vehicles crossing Eighteenth street at the intersection of Reynolds avenue? A. Swerved to left to avoid collision with truck.

"7. What caused the defendant's truck to overturn? A. Colliding with Essex.

"8. Could the driver of the Essex car, if he had looked, seen the defendants' truck as it emerged from side of the stone wall on the northwest corner of Eighteenth and Reynolds avenue? A. Yes.

"9. If you believe from the evidence that the plaintiff requested the driver of the truck to drive more carefully and he failed to do so, what, if anything, was there to have prevented the plaintiff from leaving the said truck? A. Failed to stop.

"10. If you should find from the evidence that the driver of the defendant's truck drove the truck negligently, state whether or not such negligence would more than furnish the condition or give rise to the occasion by which the injury was made possible. A. Negligence of truck driver furnished condition for injury.

"14. Was there a sign on Eighteenth street directing that the south-bound traffic slow down before passing its intersection with Reynolds avenue? A. Yes, according to ordinance No. 23-756.

"15. If you answer the last question in the affirmative, did the driver of the Essex coach slow down in obedience to said sign? A. No.

"16. Could Ruzich have prevented the accident by turning the Essex coach to the right, after he saw the defendants' truck in the intersection? A. No.

"17. Did the defendants' driver stop the truck in question before entering into Eighteenth street? A. No.

"18. Did the defendants' driver sound a horn while approaching or before entering upon Eighteenth street? A. No.

"19. Did the defendants' driver have the truck in question under reasonable and proper control before entering and crossing Eighteenth street? A. No.

"20. Did the defendants' driver negligently and wantonly fail to keep a lookout for south-bound traffic on Eighteenth street, as he approached the same? A. Negligence, but not wantonly.

"21. At what rate of speed did the defendants' driver approach and enter into and partly cross Eighteenth street? A. Twenty to twenty-five.

"22. Did the defendants' driver wantonly and recklessly operate the truck in question just prior to and at the time of its collision with the automobile in question? A. Yes."

The driver of the Essex car was not made a party to this action.

Appellants urge as one ground for reversal that the driver of the Essex car was driving negligently at too high a rate of speed and upon the wrong side of the street when the collision occurred; that at that time the negligence of appellants was past and that the cause of the collision and injury to the appellee was the negligence of the driver of the Essex car.

The question of whether the negligence of the driver of the Essex car was the proximate cause of the injury was submitted to the jury under a proper instruction. It was a proper question for the jury to decide. Evidence was given by which it could have been decided either way by the jury. The jury, after hearing the conflicting evidence, found as set out in the above special questions. We see no reason for disturbing those findings. Under these findings, we conclude the case should follow the rule laid down in *Nevitt v. Railway Co.*, 115 Kan. 439, 223 Pac. 269. There this court said:

"There were, it seems, two concurrent acts of negligence which brought about the death of Nevitt—the excessive speed of the train, and Gibson's driving of the Ford car on the track without assurance that it was safe to do so." (p. 442.)

Appellants argue that the negligence of the driver of the truck

consisted of not stopping at the stop sign and going into the intersection at too great a rate of speed, and that these two acts of negligence were past and the truck had reached a place of safety when it was hit by the Essex car. They argue that the collision would not have occurred had it not been for the negligence of the driver of that car.

We conclude, however, that the negligence of the driver of the truck was still going on when the truck was hit. It was still in a place of danger where the driver's negligence had put it. But for his negligence in not stopping, and in going into the intersection at too great a rate of speed, as found by the jury, the truck would not have been where it was when it was hit, and the collision would not have occurred. The case is one, then, where two acts of negligence occurred, both of which contributed to the injury. In such a case the injured party may at his option institute an action and recover against one or all of those contributing to the injury. (See *Kansas City v. Slangstrom,* 53 Kan. 431, 36 Pac. 706; *Pinson v. Young,* 100 Kan. 452, 164 Pac. 1102.)

We will next examine the argument of appellants that judgment should have been for them on special questions 11, 12 and 13 notwithstanding the general verdict. By these answers the jury found in effect that appellee's injuries were not sustained in the course of his employment as an employee of appellants, that there was a rule of the company that no person but employees of appellants were permitted to ride on the trucks, and that the injuries sustained by appellee were the result of his violation of this rule. We have seen the evidence upon which these answers were based.

Appellants point out those answers and argue that they amount to a finding that appellee was a trespasser on the truck, and on that account appellants are not liable for an injury to him even though it is caused by the negligence of one of their employees.

In answer to that argument appellee urges that he was on the truck by permission of appellants. That would make him a licensee and the company would be liable for an injury caused by the negligence of one of their employees to a licensee.

This necessitates that we examine the evidence and findings of the jury on that phase of the case. The jury made no finding as to the knowledge of the foreman. Before we may say that the general verdict in favor of appellee found this fact in his favor we must look at the pleadings and the evidence in the case on that point.

The petition simply states that appellee "was riding on a truck owned, operated and controlled by defendants." There were no allegations about appellee being a licensee or invitee of appellants. What is the evidence as to this? Appellee is the only one who offered any testimony on this point. His evidence is as to the foreman—"he seen me get on the truck; he seen me helping him load, and he saw me get on the truck." This court has said that evidence that a certain person had his head turned in a certain direction, and could have seen things within the range of his views is not evidence that he actually saw what he could have seen. What he actually did see is the matter of speculation and conjecture. (*Handley v. Railway Co.,* 61 Kan. 237, 59 Pac. 271.) In that case a porter on a train had been holding a handrail leaning out watching a boy that was hanging on to the train. This court held that this was not sufficient evidence that the porter saw the perilous position of the boy. This decision was followed in *Gamble v. Oil Co.,* 100 Kan. 74, 163 Pac. 627. Furthermore, even if it were shown that the foreman saw appellee get on the truck, we do not think that in itself would be sufficient to justify a conclusion that appellee was the licensee or invitee of the company. We know of no rule which makes it the duty of the company to use physical force to see that no one trespasses on its property or rides upon its vehicles in order to escape liability for an injury to the trespasser. Applying these principles, we conclude there was no evidence that the company permitted or knew that appellee was going to ride the truck that night. Since this is so, then it must follow that as to the appellants, appellee was a trespasser.

Appellee makes a vigorous argument that the jury did not as a matter of fact find that there was a rule of the company against anyone but employees riding on the trucks. He points out that the answer to question twelve means only that he had been told there was such a rule. This argument is too subtle for us. The answer to the next question is a finding that the injury was the result of appellee violating the rule of the company which forbids anyone but employees riding on the trucks. This finding in effect means that the jury considered the entire question under the belief that there was such a rule. We will discuss the case, therefore, with the question settled that appellee was not on the truck in question with the permission or knowledge of the company or any agent of the company authorized to give such permission.

If he was a licensee, or invitee, on that truck he did not sustain this relationship to appellants. He only sustained it to the driver of the truck, an employee of appellants who had no authority to permit anyone other than himself to ride this truck. As far as appellants are concerned, he was a trespasser, just as much so as the boy who attempts to catch a ride on a moving train (*Handley v. Railway Co.*, 61 Kan. 237, 59 Pac. 271), or on a truck being driven through the street (*Gamble v. Oil Co.*, 100 Kan. 74, 163 Pac. 627), or on a truck being driven in a yard (*Newlin v. Standard Oil Co.*, 122 Kan. 86, 251 Pac. 394). This is true because the liability of an employer for a tort of a servant springs from the doctrine that the servant is acting for the master. The theory is that in the doing of the work the servant is performing at the time of the injury he is a sort of *alter ego* for his employer. Following out this theory, then, naturally when the servant departs from the line of duty, which the master has hired or directed him to perform, he acts not for his employer, but for himself. His acts are those of himself—not those of his employer—and the responsibility for the results of these acts is that of the employee and not the employer. In this case appellants had hired the truck driver to drive a truck and deliver ice cream. It had sent him on a particular trip. It had instructed him not to haul anyone else. These instructions were known to appellee. It was no part of the employment of the truck driver to permit some one else to ride with him. When he permitted appellee to ride his truck, as far as hauling appellee around is concerned, he was not acting for his employer at all. He was acting for himself in his own personal capacity. As far as appellee is concerned, he was in the same position as though he and the truck driver had concluded to take a sight-seeing trip along highway 40 on the company's time and had been injured out by Lawrence.

Appellee attempts to meet this situation by an argument that this question was not raised in the trial court. We think a sufficient answer to that argument is the fact that the questions referred to were submitted by the court and answered by the jury.

We have seen question No. 22 and the answer. The answer to this question is a finding the truck driver wantonly and recklessly operated the truck in question just prior to and at the time of the collision. Appellee points out this finding and argues that even should this court conclude that appellee was a trespasser on the truck, still appellants would be liable for an injury to him if it were caused by

the wanton, willful negligence of the driver. His authority for this argument is a statement in some cases decided by this court, where it was said in the case of a boy hopping on a train, the boy catching a ride on the truck and the boy stealing a ride on the truck with the driver's consent, all trespassers as to the employers, that the employer would not be liable except for wanton or willful negligence. He urges that the converse of this is true, and that even though the injured party is a trespasser the employer would be liable if the injury was caused by the wanton or willful negligence of the driver.

We cannot follow appellee that far. We have dealt heretofore in this opinion with the theory of the rule that makes an employer liable for the torts of a servant, and with the theory which excuses the employer when tort occurs while the servant is acting outside the scope of his employment. An examination of the above cases shows that the liability is based on knowledge on the part of the employer of the position in which the injured party finds himself. We have seen that the rider on the vehicle, who is there on the invitation or the license of a servant who had no authority to extend the invitation, is a trespasser; that is, the invitation to ride is not the invitation of the employer. It is the invitation of the employee. Now, if this is true the consequences of having extended this invitation, which put the injured one in a place of peril, are those of the employee alone and not of the employer. The jury found here that appellee was injured as a result of his disobeying the rule against employees riding on the trucks. As far as consequences to the trespasser are concerned the driver was acting outside the scope of his employment the minute appellee got on the truck and continued so to act during all the time he rode. The rule of liability is much the same as though appellee had crawled on the truck without the driver knowing anything about it. No one would contend that under those circumstances the company would be liable. As a matter of fact, as far as appellants are concerned, they knew nothing of the presence of appellee on that truck. It is true the driver knew of it and the jury found that he drove wantonly, but all this time he was acting for himself, not for his employer, as far as appellee is concerned. This is the theory upon which the case of *Drescoll v. Scanlon,* 165 Mass. 348, was decided. In *O'Leary v. Fash,* 245 Mass. 123, the injured person was riding on an ice-cream truck as the guest of a driver who had no authority to invite. The same argument was made there that we are discussing. The court said:

"The defendant owed no duty to the plaintiff. The latter was not on his truck by his invitation or by the invitation of anyone authorized to act for him. So far as concerns the plaintiff and her presence on his truck, it is in law a matter of indifference to the defendant whether the driver of the truck exercised due care or was grossly negligent or was guilty of wanton or reckless conduct." (p. 126.)

To the same effect is *Thomas v. Magnolia Petroleum Co.*, 177 Ark. 963. This case contains a full discussion of the authorities on this question and is decided on the doctrine of *respondeat superior*, as it has been discussed in this opinion. See, also, *Gas & Elec. Co. v. Crouch*, 123 Ohio St. 81. The court there said:

"The petition alleges that the servant Callahan 'willfully, recklessly, wantonly, carelessly and negligently drove said automobile truck at a high and excessive rate of speed.' This allegation would be very pertinent if the suit were against Callahan, but willfulness, recklessness, and wantonness cannot be charged against the owner of the car, unless the owner entertained a conscious purpose to do a wrongful act, or unless it be shown that he was indifferent to the safety of others after knowledge of their danger." (p. 85.)

See, also, *Zampella v. Fitzhenry*, 97 N. J. L. 517, 117 Atl. 711, 24 A. L. R. 666. This case reviews the authorities on the point we are discussing and follows the doctrine of *respondeat superior* much as it has been discussed here. The employer was held not liable in that case. In the volume of A. L. R. cited there is a note reviewing many of the authorities. We have concluded that the better-reasoned cases support the doctrine set out herein.

This court has announced the rule that the employer is not liable for the torts of an employee when the employee in committing the tort is acting outside the scope of his authority even though the act of the employee is willful and wanton. In *Taylor v. St. Louis-S. F. Rly. Co.*, 124 Kan. 751, 260 Pac. 496, the jury found that some brakeman threw a trespasser off a moving train with personal malice and that it was not done in furtherance of any duty of the brakeman to the company, but was done contrary to the rules and requirements of the company. This court said:

"It has been settled that the liability of the master for the tortious acts of his servant depends on whether they were done in the master's business and within the scope of his employment. To fasten liability on the master it is not enough that the act was done while the servant was at the time in the master's service; the authority must have been expressly conferred or is fairly to be implied from the nature of the employment and the duties incident to it, and if not done within the duties of the servant or the scope of his employment, the servant alone is responsible."

To the same effect is *Kemp v. Railway Co.*, 91 Kan. 477, 138 Pac. 621. There the brakeman chased a trespasser off a train and followed him up an embankment and willfully shot him. This court held the railway company not liable. An analysis of these cases discloses that they were all decided on the doctrine of agency, as discussed herein.

The findings of the jury in this case clearly make the appellee a trespasser on the truck. As far as appellants are concerned, he was permitted to ride on the truck by one who had no authority to do so and no authority to bind the company thereby. This act of the driver of the truck in permitting appellee to ride was clearly beyond the scope of his employment. The truck driver, his employee, and appellee continued to sustain this relation to each other from the time appellee first got on the truck till the collision occurred. There never was a time when the relationship between them changed during the entire trip. The only duty owed was that which the driver owed appellee. As far as appellants and appellee are concerned, they were strangers to each other when he got on the truck and nothing happened to change that relationship.

It follows that the motion of appellants for judgment on special questions 11, 12 and 13 should have been sustained.

The judgment of the district court is reversed, with directions to enter judgment for appellants.