**Jo Ann PIERCE (Meissner), Plaintiff,**

v.

**DER WIENERSCHNITZEL INTERNATIONAL, INC., Defendant.**

**Civ. A. No. 16920–3.**

United States District Court,
W. D. Missouri, W. D.

March 25, 1970.

As Amended April 20, 1970.

Lantz Welch, for Quinn, Peebles & Hickman, Kansas City, Mo., for plaintiff.

James F. Duncan, and Darrell L. Havener, for Watson, Ess, Marshall & Enggas, Kansas City, for defendant.

## ORDER DENYING MOTION FOR JUDGMENT NOTWITHSTANDING VERDICT OR, ALTERNATIVELY, FOR NEW TRIAL

BECKER, Chief Judge.

This is a civil action brought by plaintiff to recover for personal injuries which she suffered when an airplane of defendant, operated by plaintiff's husband as an agent of defendant, crashed at the Emporia, Kansas, airport. On May 28, 1969, a jury found the issue of liability in favor of plaintiff and awarded her damages in the amount of $37,971.50. The case was submitted on the theory that plaintiff was a business visitor under the Kansas cases and the Restatement of Agency, 2d, Section 236.

Defendant now moves for judgment notwithstanding the verdict or, in the alternative, for a new trial contending:

(1) that there is no evidence that John Meissner had defendant's express, implied or apparent authority to transport plaintiff as a guest passenger in the airplane;

(2) that plaintiff's evidence establishes that she was in the airplane solely for personal reasons in no way related to the business of defendant;

(3) that plaintiff's evidence failed to establish any negligence by John Meissner which proximately caused plaintiff's alleged injuries;

(4) that the court erred in giving instructions numbered 1, 2 and 3;

(5) that the court erred in giving instructions P-1 and C-1; and

(6) that the verdict of $37.971.50 is excessive in amount and not supported by the evidence.

With respect to the first two contentions of defendant, it is indeed uncontroverted that plaintiff was invited by John Meissner (defendant's agent and, at that time, plaintiff's husband) to accompany him on what was otherwise indisputably a flight made within the scope of his authority, agency or employment, for the sole purpose of discussing his and plaintiff's marital difficulties in order possibly to effect a reconciliation.

■ The evidence supported a finding by the jury that plaintiff previously, with knowledge and approval of the defendant, had travelled with her husband to promote defendant's business interests committed to her husband. As a member of her husband's household, working with him in business relationships, she was a welcome worker in the defendant's business promotions.

In support of its motion for judgment, defendant relies primarily upon the case of Jones v. Avco Mfg. Corporation (C.A. 8) 218 F.2d 406, in which it was held that an employer was not liable for any injury occurring to an employee's wife who was accompanying him on business trips solely for personal reasons, having nothing to do with the business of defendant. The opinion in that case stated as follows:

"Regardless of whether Mrs. Jones was a guest or not, and entirely independent of that question, it is necessary to a recovery by Mrs. Jones against Avco, Mr. Jones' employer, that the record disclose a justifiable basis for making Avco responsible to Mrs. Jones for the injury she received as a result of Mr. Jones' negligence. To support such responsibility and liability on the part of Avco, the general

rules of agency must be applied rather than the more limited rules applied in determining status as a guest or compensating passenger under varying state guest statutes. There was no express or implied authority given Jones by Avco to transport anyone with him on this trip. Avco was without knowledge that Jones was to take anyone with him. It does not appear that it was necessary in the discharge of Jones' duties that he transport someone from Kansas City to Oklahoma City for the purpose Mrs. Jones accompanied him. It would be a dangerous doctrine to say that an employer is liable for injury caused by the negligence of an employee to anyone whom the agent, for reasons of his own, chose to take with him as a passenger without the knowledge of the employer and without the latter's express or implied authority. We are convinced that such a legal doctrine would transgress the generally established rules of agency. Gosney v. Metropolitan Life Ins. Co., 8 Cir., 114 F.2d 649; United States v. Eleazer, 4 Cir., 177 F.2d 914; Liggett & Myers Tobacco Co. v. De Parcq, 8 Cir., 66 F.2d 678; Pesot v. Yanda, 344 Mo. 338, 126 S.W.2d 240; Klotsch v. P. F. Collier & Son Corp., 349 Mo. 40, 159 S.W.2d 589; Oganaso v. Mellow, 356 Mo. 228, 201 S.W.2d 365." 218 F.2d 408–409.

If this quotation from and the rule of the *Avco* case is applicable to this case under principles of conflicts of law, the judgment in this case should be set aside. The *Avco* case states that the passenger must have been invited by the employee with the actual express or implied authority of the employer. No Kansas case is cited in support of this rule, which is based on Missouri cases of. limited application, if currently viable. No attempt is made in the *Avco* case to deal with the legal principle of apparent authority, the *Restatement* or the Kansas cases. Although the evidence warrants a finding in this case that Mr. Meissner had implied or apparent au-

thority, or both, to invite his wife on the flight and that his wife accepted the invitation in reliance upon that authority, it is defendant's contention that this is not enough; that the law of Kansas, expressed in Jones v. Avco, *supra*, requires that there be express or implied authority. In support of that contention, defendant relies also upon the case of Mayhew v. DeCoursey, 135 Kan. 184, 10 P.2d 10 (1932) to the following effect:

> "Where a truck driver without authority from his employer so to do permits one not employed to ride his truck and the one permitted to ride is injured by the negligence of the driver, the employer of the truck driver is not liable, even though the negligence of the driver was wanton."

In the *Mayhew* case, however, there was no apparent or implied authority and there was an express directive forbidding the invitation. Accordingly, the *Mayhew* case is persuasive only in cases where the employee is "without authority," including any kind of apparent or implied authority, to make the invitation or to give the gratuitous ride. To a similar effect is Restatement of Agency 2d § 242, p. 534, cited by the defendant for the rule that:

> "A master is not subject to liability for the conduct of a servant toward the person harmed as the result of accepting or soliciting from the servant an invitation, not binding upon the master, to enter or remain upon the master's premises or vehicle, although the conduct which immediately causes the harm is within the scope of the servant's employment."

Comment *a*, however, to that section expressly provides that "[i]f a servant is authorized or *apparently authorized* to invite persons upon the vehicle or premises of the master, a person so invited is a guest of the master, and, if entry is for a business purpose, he is a business visitor." (Emphasis added.) Therefore, Dye v. Rule, 138 Kan. 808, 28 P.2d 758, and Ruff v. Farley Machine Works

Co., 151 Kan. 349, 99 P.2d 789, both of which quote and follow *Mayhew,* are equally unpersuasive on this point. The law in Kansas appears to follow the *Restatement* (relied on by defendant) and to permit recovery by plaintiff in this case. Independently, since the plaintiff was injured in an interstate flight, defendant may have been liable under federal law.[1]

Defendant contends on the question of applicability of the guest statute that, under the new Missouri conflicts of law doctrine announced in the recent case of Kennedy v. Dixon, Mo., 439 S.W.2d 173, this Court should apply the choice of law rule which the state of the forum would apply; that under the new "significant relationship" doctrine of the *Kennedy* case, Kansas law would be applicable. This contention has merit. Defendant recites that "[p]laintiff was temporarily residing with her parents in Missouri"; that "[s]he and her husband were in the process of moving from Texas to Illinois when their marital prob-

lems arose"; that plaintiff "began her trip by flying from Missouri to Nevada"; that on "the return journey plaintiff left from Nevada with an intended destination at the Olathe, Kansas airport"; and that the "negligence, if any, of her husband occurred in Kansas where plaintiff was injured." It is suggested that the Kansas guest statute bars liability to the plaintiff.

■■ It is concluded that the law of Kansas, being the law of the state having the most "significant relationship" to the trip and the casualty, should be applied. Nevertheless it is concluded that the Kansas guest statute is not applicable to airplane passengers in Kansas. Hayden v. Boyle, 174 Kan. 140, 254 P.2d 813.

■ The defendant's third contention is that the evidence failed to show any negligence by John Meissner which caused the plaintiff's injuries. This is without merit. The evidence showed that, as defendant's aircraft approached the runway of the Emporia, Kansas,

1. In some respects, application of the "significant relationship" test to the facts of this case, would point toward a choice of Missouri law. As in Kennedy v. Dixon, *supra,* the trip in this case was, for plaintiff, a Missouri-based trip, and she was temporarily residing in Missouri. Defendant argues persuasively that, under Missouri law, actual or implied authority is necessary to make the plane owner liable for the operator's negligence. Defendant cites Roth v. J. N. Roth & Co., 363 Mo. 767, 253 S.W.2d 802, in which it is explicitly stated:

"It has long been the rule in Missouri that an employee driving an automobile upon the business of his employer, if the scope of his employment does not include the transportation of persons as passengers or guests, that there is no implied or apparent authority to invite others to ride with him, and the employee cannot render his employer liable by the mere negligent operation of the automobile which results in injury to one whom he has invited to ride." 233 S.W.2d at 809. In accord is Accurso v. Accurso, Mo. App., 341 S.W.2d 354, and cases therein cited.

The cases cited by defendant, however, involve automobiles and not airplanes. It

is possible that, even under Missouri law, ownership alone might be enough to make the owner liable for the operator's negligence. In Sosa v. Young Flying Service (S.D.Tex.) 277 F.Supp. 554, it was held that Section 1301(26), Title 49, U.S.C., which provides that any person who authorizes operation of an aircraft in the capacity of an owner or otherwise shall be deemed to be engaged in the operation of the aircraft, was applicable in a negligence action where the flight was intrastate in character if the state laws were not in conflict with Section 1301(26). (For a contrary view, see Rosdail v. Western Aviation, Inc. (D.Colo.) 297 F.Supp. 681.) The principle would seem to have special applicability in the case at bar, where the flight was interstate, and the Missouri statutes relative to aircraft are not in conflict with Section 1301(26). See Sections 305.010, 305.040, R.S.Mo.

Defendant does not make any serious contentions that the operator of the airplane (Meissner) was out of the scope of his employment in the route which he took to Chicago via Kansas City. Its only serious contention, rather, is that it was without Meissner's scope of authority to invite passengers to ride in the airplane with him.

Airport, the right engine began to fail. Then Meissner switched the fuel selector and indicated that he intended to feed both engines from both gasoline tanks. From this and other evidence a submissible case of negligence was made. Meissner had little experience with the aircraft. When he switched the fuel selector almost immediately the left engine stopped and the aircraft crashed short of the runway. A Federal Aviation Administration Report, admitted into evidence over the objection of defendant,[2] indicated that the left main fuel tank was empty and that the left auxiliary tank contained one inch of gasoline and the left main fuel selector was in the "on" position. The right main tank contained one inch of fuel and the right auxiliary tank contained three inches but its fuel selector was in the "off" position. The fuel cross-feed valves were in the "off" position. This meant that the pilot had ample available fuel which he could have utilized through the cross-feed valves to make a safe landing, but negligently shut off both engines. Therefore the jury could infer that under the facts and circumstances that Meissner negligently turned both of these switches to the "off" position, cutting off gasoline completely to the engines.

Fourth. Defendant contends that the Court erred in refusing instructions numbered 1, 2 and 3. Instruction number 1, requested by defendant, was that "If you find that at the time of the aircraft accident plaintiff was in the aircraft for personal reasons and was not engaged in any business on behalf of the defendant, then your verdict shall be for defendant." This request ignored the question of apparent authority dealt with above and is, accordingly, without merit. Further it ignored the rule of § 236 Restatement of Agency 2d involving dual purposes and therefore was misleading. The same reasoning applies to requested instruction number 2, which reads as follows:

"If you find that John Meissner was not authorized by defendant to carry passengers in the aircraft during the trip from California to Chicago, then your verdict shall be for defendant."

The instruction ignores the question of apparent authority which is involved in this case, as has been concluded above. The instruction at the least is misleading and probably erroneous. The

---

2. Defendant objected to the admission in evidence of this report on the basis of the Kansas case, Moritz v. Rivers, 175 Kan. 809, 267 P.2d 506, wherein it was held that a Civil Aeronautics Board accident investigation report was hearsay and inadmissible in litigation respecting the crash of an airplane. This Court, however, is not restricted to rules of evidence as applied in the Kansas courts. The crucial question in the *Moritz* case, further, was who was flying the plane at the time of the tragedy, a subject on which the Civil Aeronautics Board report may well have constituted only hearsay.

*Moritz*, furthermore, antedates the present evidence code of Kansas under which the report would apparently be admissible. See K.S.A. § 60–460(o) (1964), which provides as follows:

"*Content of official record.* Subject to section 60–461 [providing that evidence shall not surprise the adverse party, (1) if meeting the requirement

of authentication under section 60–465, [requiring that the document (1) purports to be published by the authority of a state or nation, or (2) that evidence show it to be an exact copy of the record or entry, or (3) the writing is attested by a state officer having custody of the record] to prove the content of the record, a writing purporting to be a copy of an official record or of an entry therein * * *" Similarly, under Rule 43(a), F.R.Civ.P., evidence is admissible in federal trial courts 'which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of general jurisdiction of the state in which the United States court is held.' Under this rule, it is well settled that public records and reports of federal agencies are admissible. See § 1733, Title 28, U.S.C.; Chesapeake & Delaware Canal Co. v. United States, 250 U.S. 123, 39 S.Ct. 407, 63 L.Ed. 889.

ground raised by defendant on the refusal of this instruction is without merit.

▮▮▮ Instruction number 3 requested by defendant was an "emergency" instruction, by which the jury was instructed that the standard of care in such situations is "such care as an ordinary person would exercise when confronted by a like emergency under circumstances then existing." Under the evidence of this case, however, the instruction was properly refused. It is well established that the "emergency" principle is not applicable in cases where the defendant's own conduct has precipitated the emergency. The pilot's negligence and no other cause for the "emergency" was submissible under the evidence. See Restatement of Torts Second § 296; see also Anno., "Emergency rule" as applied to drivers, 111 A.L.R. 1019, l.c. 1020. Defendant's fourth contention is therefore without merit.

▮▮▮ Fifth. Defendant contends that it was error to give instructions P-1 and C-1. Instruction P-1 is a standard negligence instruction, stating that if the jury finds that (1) Meissner "was operating the defendant corporation's aircraft within the scope and course of his employment by defendant corporation at the time of the crash" and (2) he "mismanaged the fuel supply in said aircraft" and (3) he "was thereby negligent" and (4) as a "direct result of such negligence, the plaintiff sustained damage," the verdict must be for plaintiff.

"Negligence" was defined in that instruction as "that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances." The instruction, as given, was correct, and the objection to it was correctly denied. As stated above, the instruction on the standard of care to be used in emergencies was inapplicable to this case. There was no error, for the reasons stated above in this opinion, in giving instruction number C-1, which, among other things, defined "apparent authority" and instructed that the invitation given to plaintiff was not unauthorized if given with apparent authority.[3]

Finally, defendant contends that the verdict is excessive in amount and not supported by the evidence. The jury found special damages in the sum of $2,976.50 and damages for personal injuries in the sum of $35,000.00. Defendant states that this is excessive where the evidence showed (1) that plaintiff was hospitalized only one time; (2) that after resting at home for a few days, she entered Research Hospital on September 27, 1967, for her sole hospitalization; (3) that an x-ray showed only a mild compression fracture from the superior aspect T-9 and T-10 and (4) that the lumbar spine, cervical spine and skull were still normal; (5) that the plaintiff complained of some soreness in the neck and tenderness over the area of T-9 and T-10; (6) that the plaintiff had to wear a Taylor brace; (7) that plaintiff's actual orthopedic treatment in the

3. The instruction no. C–1 reads as follows:
"In determining whether John Meissner was authorized to invite the plaintiff to ride as a passenger in the plane from Las Vegas to Kansas City you will be guided by the following rules of law.
"Authority of an employee to extend an invitation may be actual or apparent.
"Actual authority may be expressly granted by particular words or may be implied from circumstances, even though not granted by particular words.
"Apparent authority is not actual authority, but is the reasonable appearance of actual authority, believed to exist by plaintiff, resulting from the defendant's negligent omission or omissions or its acquiescence in the employee's activities known to the plaintiff and of which defendant knows, or in the exercise of ordinary care should have known.
"In this case the invitation to plaintiff is not to be found unauthorized solely because it may have been or was given to serve the purposes of the employee John Meissner if the invitation was within his actual or apparent authority, and even though the service of personal purpose of John Meissner was predominant."

hospital was completed by October 6 (after she had entered the hospital on September 27, 1967), but that plaintiff remained at Research Hospital for an additional 10 days, during which time she "received various tests, examinations and treatment for emotional and general health problems which she had prior to the airplane accident; (8) that plaintiff was seen by Dr. Donald Spencer on November 3, 1967, at which time she did not complain of neck pain, had some discomfort in the area of T-9 and T-10, and took a neurologic examination which "was within normal limits"; (9) that, although plaintiff was to return to see Dr. Spencer the following month, she did not return until September 19, 1968, about ten months later; (10) that plaintiff meantime was involved in an automobile accident on December 2, 1967, and taken to the x-ray room at Research Hospital, where x-rays showed a stable, essentially healed slight compression fracture of the superior aspects of T-9 and T-10; (11) that plaintiff was having pain in the region of T-9 and T-10 and her neck on September 19, 1968, and plaintiff began a prescribed two-week course of physical therapy at Baptist Hospital on September 23, 1968, but completed only four sessions; (12) that plaintiff did not visit Dr. Spencer again until April 28, 1969, when she went to be examined in anticipation of this litigation; (13) that she then complained of numbness in her left shoulder and pain in the dorsal region of the spine to the right of the midline; (14) that x-rays reviewed by Dr. Hunt showed that plaintiff had sustained a mild compression fracture of two thoracic vertebrae and his neurological examination was negative except for some hypesthesia of the right arm, somewhat vague in distribution and not conforming to dermatone or peripheral nerve distributions; (15) that Dr. Hunt testified that he could not say whether plaintiff's complaints at the time he saw her were caused by the airplane accident, the later automobile accident, or some combination of the two; (16) that plaintiff's decision to stay away from work for nearly four months was apparently her own, because Dr. Fitzgerald told her that she could return to work at any time following her discharge on October 16, 1967, and Dr. Spencer testified that he did not put any restrictions on her returning to work; (17) that plaintiff returned to work at a salary $50 per month higher than before the accident and at the time of trial was earning $600 a month, whereas her pre-accident salary had been $400 a month; and (18) that a comparison of x-rays of the dorsal spine taken one month prior to the accident at Baptist Hospital and those taken immediately following the accident at Research Hospital are "nearly identical" and show a compression so slight that it is "nearly immeasurable."

Defendant cites a number of Missouri cases in support of this contention: Carroll v. United States (E.D.Mo.) 247 F.Supp. 703, reversed (C.A.8) 369 F.2d 618; Votrain v. Illinois Terminal R. Co., Mo., 268 S.W.2d 838; Beard v. Railway Express Agency, Inc., Mo., 323 S.W.2d 732; and Abernathy v. St. L.—San Francisco Ry. Co., 237 S.W.2d 161. In *Carroll,* the plaintiff sustained a superficial laceration which left no scar; chest trouble from which he fully recovered, "back trouble", "stiff neck" and a "sore shoulder". He was hospitalized for 28 days and spent 6 days in bed. The Veterans Administration paid the hospital bill of $1,463.63. A $3,000 verdict was not deemed inadequate. In *Votrain,* a $75,000 verdict was reduced to $45,000 by the trial court and to $35,000 by the Missouri Supreme Court when the evidence showed the 24-year-old plaintiff to have fallen 22 feet down an elevator shaft and to have sustained a compression fracture of the third and fourth dorsal vertebrae, fractures of the traverse processes of the first, second, third and fourth lumbar vertebrae on the left side and fractures of the left radius and the coronoid process of the left ulva, both at the elbow, requiring an operation on the elbow. In *Abernathy,* an $85,000 verdict was reduced by the trial

court to $45,000 and to $35,000 by the Missouri Supreme Court. The plaintiff was a 39-year-old fireman earning approximately $300 a month who fell from a locomotive and sustained a compression fracture of the twelfth dorsal vertebra require six days' hospitalization and the constant wearing of a Taylor brace since the injury and the inability to work (an attempt to do so resulting in six weeks' added hospitalization). In *Beard,* a $68,000 verdict was reduced to $48,000 by the trial court and to $38,000 by the Missouri Supreme Court. A 54-year-old plaintiff had been hospitalized 3 times, had spondifolasthesis of the fifth lumbar vertebra with resulting nerve root impediment, and had suffered loss of wages of $10,150.

In opposition to the claim of excessive damages, plaintiff states that some inflation has taken place since the decisions cited by defendant were rendered, and cites the Oklahoma case of Heavy Haulers, Inc. v. Jones, Okl., 304 P.2d 292, a 1956 case, in which a plaintiff received an award of $135,000 for a "broken neck" (a compressed fracture of the 6th cervical vertebra). The cases cited by defendant, however, have greater applicability to the case at bar by virtue of their greater similarity to the nature of the injuries in the case at bar. In each of the cases cited by defendant, furthermore, the injuries were substantially more serious than those incurred by plaintiff in the case at bar, but the awards were reduced by the Missouri Supreme Court to amounts approximately equal to the verdict in this case.

■ The conclusion that the damages awarded in this case were excessive is even more compelling when they are compared with damages awardable under the law of Kansas. In Kansas jurisprudence, "[t]here is no precise formula for determination of damages for personal injuries, but each case must largely be governed by its own facts." Henderson v. Kansas Power & Light Co., 188 Kan. 283, 362 P.2d 60. As in cases in other states, many of the Kansas cases contain language indicating that a verdict of a jury will stand unless it is "so grossly excessive as to shock the court's conscience or indicate passion and prejudice of the jury." Smith v. Wichita Transp. Corp., 179 Kan. 8, 293 P.2d 242. This maxim, however, is qualified by a more recent statement of the Kansas Supreme Court in Domann v. Pence, 183 Kan. 135, 325 P.2d 321, 325, that "[n]o verdict is right which more than compensates—and none is right which fails to compensate."

■ Further, awards are less likely to stand without remittitur in Kansas when the present physical condition of the plaintiff, as in the case at bar, may have been contributed to by causes other than the accident with which the litigation is concerned. See, e.g. Duncan v. Branson, 153 Kan. 344, 110 P.2d 789. In Kansas, awards in cases comparable to that at bar have been very modest. Domann v. Pence, *supra,* probably represents the only case like plaintiff's where the award approached that given by the jury here. In *Domann,* a 34-year-old woman received $29,458 in damages for injuries to her lower backbone. But the injuries in that case were of a more serious nature than in this case. There, a portion of the lower backbone was removed and plaintiff was left with a 20–25% disability which would grow worse with age. A case of greater comparability with that at bar is Knoche v. Meyer Sanitary Milk Co., 177 Kan. 423, 280 P.2d 605, where a 41-year-old married woman, who was a school teacher, received a spinal injury which reduced her effectiveness in her profession. In Perry v. Schmitt, 184 Kan. 758, 339 P.2d 36, an award of $19,500 to an automobile guest who suffered a concussion and a permanent 30% limitation in flexion and extension of a badly shattered elbow, and in Slade v. City Cabs, Inc., 193 Kan. 105, 392 P.2d 127, an award of $15,044 principally for continuing pain and suffering was deemed not to be excessive where it also necessitated a change of employment and loss of work. Under all the comparable facts and circumstances

of this case under Kansas law, and applicable federal standards it is concluded that the jury's award in this case should be remitted to $22,500.

It is therefore

Ordered that defendant's motion for new trial be, and it is hereby, denied on condition that plaintiff file a remittitur herein to $22,500 on or before 7 days from the date of entry of this order. See 4 West's Federal Forms § 4574, p. 150. It is further

Ordered that unless within seven days plaintiff files the remittitur required, the defendant's motion shall be deemed to be granted, unless otherwise ordered for good cause shown. It is further

Ordered that defendant's motion for judgment in accordance with the motion for directed verdict be, and it is hereby, denied.

It is noted that plaintiff's remittitur was filed prematurely on March 4, 1970, despite the direction in the "Memorandum to Counsel" of January 7, 1970, that the time for remittitur would not begin to run until the filing of this order. In spite of its being premature, however, the remittitur will be deemed to constitute compliance with this order.