MAYBELLE CLARK, Appellant, *v.* HARNISCHFEGER SALES CORPORATION, Respondent.

Second Department, June 3, 1933.

- *James G. Purdy* [*Arthur K. Wing* with him on the brief], for the appellant.

*Arthur Block* [*Emil N. Baar* with him on the brief], for the respondent.

KAPPER, J.   The learned trial justice at the close of the testimony reserved decision of defendant's motion to dismiss the complaint until after verdict.   Plaintiff obtained a verdict for $50,000 damages. Thereupon the defendant moved to set aside the verdict upon all grounds stated in section 549 of the Civil Practice Act, and also renewed the motion to dismiss the complaint made at the close of the entire case.   Decision upon these motions was later rendered, and both motions were granted.   No order was entered, but judgment accordingly was entered.   The appeal from what is stated in the notice of appeal as the " order entered in the clerk's minutes " must be dismissed.   (*Traub* v. *Arrow Manufacturing Corp.*, 207 App. Div. 292.)

The defendant's principal place of business was in Wisconsin. It manufactured and installed gasoline shovels, cranes and excavators.   It maintained, among other service stations, one at Hoboken, N. J.   One of its machines was being erected in Ashland, Penn. The Hoboken service station was in charge of one Edwards as eastern service manager.   In its business the defendant utilized some automobiles for sales and service work, and one of these automobiles was used by defendant's employee, Delmore, to go to and from Ashland to the scene of the work in which Delmore was engaged for the defendant.   This work was completed by the

beginning of December, 1930, and Delmore received from Edwards, at Hoboken, orders to return thereto from Ashland with the defendant's automobile that had been in use by Delmore.

The plaintiff, twenty-eight years of age, was a member of a theatrical troupe which had become stranded in Ashland. Being desirous of returning to New York and being without money, she, together with two other women members of the troupe, were taken in this automobile by Delmore for the purpose of getting to New York. The start was made about seven-thirty o'clock P. M., and after traveling upwards of one hundred miles, and at about two o'clock in the morning, in the vicinity of Bethlehem, Penn., the car, driven by Delmore, was suffered to strike a telephone or telegraph pole, with resultant injuries to plaintiff.

Four questions for written answer were submitted to the jury. The *first* was whether Delmore was " given permission " by Edwards " to carry passengers in the defendant's car on the trip to Hoboken," which question the jury answered in the affirmative; *second,* was Delmore negligent, also answered " Yes;" *third,* was plaintiff guilty of contributory negligence, the answer to which was " No;" and *fourth,* the amount of plaintiff's damages, that being fixed by the jury as above stated.

We shall assume that Delmore was negligent in the operation of the car, and shall also assume that plaintiff's freedom from contributory negligence was established as matter of fact. It is argued by the respondent that as this accident happened in Pennsylvania the substantive law of that State applies. Even so, respondent cites us to no case in Pennsylvania holding the question of contributory negligence to be one of law where the injured person was riding in the rear seat of an automobile, as was the case here. At any rate, the question of burden of proof of freedom from contributory negligence is a rule of evidence and provable according to the law applicable in the State of New York. (*Sackheim* v. *Pigueron,* 215 N. Y. 62; *Wright* v. *Palmison,* 237 App. Div. 22.) In the latter of the two cited cases. where the accident happened in Massachusetts, we said: " Proof of freedom from contributory negligence must be forthcoming from the plaintiff in an action for damages based upon the negligence of the defendant, and even though defendant's negligence is determined by the law of the State where the accident occurred, as a matter of substantive right, the rule governing proof of freedom from contributory negligence is a matter of procedure, and the burden of establishing it is to be applied in an action tried in our courts in accordance with the law of this State." Even a sleeping guest may not be charged with contributory negligence as a matter of law (*Nelson* v. *Nygren,* 259

N. Y. 71), and nothing in this record furnishes a sufficient basis to dispose of the case on that point.

The first of the above submitted questions is one upon which there may be said to have been evidence *pro* and *con*. The learned trial justice was of the opinion that the jury's finding that Edwards gave Delmore permission to carry the plaintiff as a passenger in the automobile " was contrary to the evidence and to the weight of the evidence." A review of the testimony shows clearly the correctness of this view. The plaintiff testified that, having spent all her money for food and being without funds for carfare to New York, and learning from a bellboy in the hotel in which she was stopping in Ashland that Delmore, also living in the hotel, was about to drive to Hoboken, she asked Delmore if she and two other girls could be taken by him; that the following day she and the other two girls, preceded by Delmore, entered his room, immediately following which the telephone bell rang; that she heard Delmore over the phone say that three young girls of a stranded theatrical company wanted to get to New York and whether it would be all right to bring them in the car, her claim being that the answer to Delmore's request was to " bring them in." She had had two conversations with Delmore, on the first of which Delmore told her that it was the company's car and that he would have to get permission to take her along.

Marie Skiff, one of the two other occupants of the car, corroborated plaintiff as to the telephone call, claiming that the party on the other end of the wire said to Delmore upon his inquiry, " All right, if you have room."

Agnes Gillen, the third one of these girls, testified that upon their request of Delmore to be given the ride, Delmore said that it was against the rules, that he wanted to help them out, " but this is a company car, and I am afraid to take a chance," and if a phone call which he was expecting came in and " if the people say I can take you girls, all right." A written statement of this witness (Exhibit F), which the witness admitted she had herself written, contained the following: " Mr. Delmore cautioned us that it was strictly against the company's rules to carry passengers in the car, but that he would take a chance as we were all without any hopes of reaching our homes. I do not think Mr. Delmore was responsible as the accident was unavoidable, and he tried to help us as much as he could as we were to be evicted from the hotel that night."

Delmore was a witness for plaintiff. At about six P. M. of the evening on which the ride started, he called up Hoboken and told Edwards that " there were some passengers there that I was going to bring in, if it was satisfactory to him;" and that Edwards said,

" it was all right, or ' O K,' or something, I think it was ' All right,' he said, I would not be positive as to the words he used, but it was satisfactory for me to take them." Delmore, from the hospital in Bethlehem to which he had been taken after the accident, wrote two letters (Exhibits D and E) to his superiors in Wisconsin. The first letter makes no mention of the persons whom he had in the car, and requested a suspension of judgment until he made a thorough report of the accident, which he attributed to coming to a " blind street " without any cautionary sign while he was driving at about thirty-five miles an hour. The second letter stated, among other matters: " The clerk at Loper Hotel knew I was going to Hoboken, N. J. and Informed three girls Actresses who was stranded at Ashland (They) the 3 girls come to me and pleaded for a ride to Hoboken that they were without a cent and wanted to reach New York. I agreed to let them ride not knowing what was to happen later. * * * It was a charitable act on my part although It may look different. * * * I have told you just how It all happened *I know I had no business carrying girl passengers.*"

This letter is almost a complete refutation of Delmore's claimed permission from Edwards to bring these women in the company's car from Ashland to Hoboken. On cross-examination Delmore testified that the reason he did not mention, in his first letter to his superiors, anything about the three girls in the car with him was because he did not want the company to know anything about it " if they were not hurt;" that there were no rules of his company against his taking people in a car of the company, and he thought that he had a right to do it. He wrote the second letter after a fellow-employee, Brockway, talked with him in the hospital and advised him " to make a clean breast of the whole thing." Having learned of the serious injury to plaintiff, he wrote the second letter referred to.

Defendant called Brockway (no longer in its employ), and he testified to having turned over this car to Delmore in Ashland. He claims to have told Delmore at the time, " This is a company car, to be used exclusively on company business. There is to be no joy riding. When this car was turned over to me, those were the instructions I received."

Edwards testified to his instructions from the Wisconsin office, which he transmitted to all men under him, and particularly when he turned the car over to Brockway, telling the latter " that the company cars were to be used for company purposes only, and that they were given to them to assist them in their work, when they could not get to their jobs by any other means than by a car."

He further testified that he called up Delmore on the morning of November 29, 1930, and, not finding him in, left word to be called back, which was done in the evening, and that the conversation did not relate to bringing in passengers or other persons in the car, and the only conversation prior to the accident was on November twenty-ninth; and a categorical statement of Edwards was, " I had no conversation relative to passengers at any time."

There was also testimony of the proprietor and telephone operator of the hotel in Ashland that on° December second there was no Hoboken call by Delmore, whose telephone calls were charged on his bills, which showed no record of a telephone call to Hoboken from the hotel on December second.

Without further discussion, I reiterate the correctness of the ruling that the finding that Edwards gave Delmore permission to carry these three girls in the car was contrary to the evidence and to the weight of the evidence. If this were all there was to the case, it may well be that a dismissal of the complaint was not justified, but that a new trial should have been granted.

The basis of the dismissal of the complaint was stated by the trial court as follows: " Before the defendant could be bound, it was incumbent upon the plaintiff to prove Edwards had either express or implied authority to grant the permission. No attempt was made to prove express authority, and it could not be implied from his position. The automobile was furnished to the employee of the defendant for use in its work, and Edwards himself would have had no right to use it for the purpose of carrying passengers. He was as much a servant of the defendant, although in a higher position, as Delmore."

The law of Pennsylvania in this respect is the same as the law in New York. " The law has always been," said CRANE, J., in *Psota* v. *Long Island R. R. Co.* (246 N. Y. at p. 393), " that a master is not liable for the acts of his servant or agent unless acting within the scope of his employment."

In *Rolfe* v. *Hewitt* (227 N. Y. 486, 491), Judge McLAUGHLIN wrote: " The rule is well settled that an agent binds his master only as to acts done within his actual authority, or within the apparent scope thereof. (*Timpson* v. *Allen*, 149 N. Y. 513, 519; *Edwards* v. *Dooley*, 120 N. Y. 540, 551.) A servant is acting within the scope of his employment when he is engaged in doing for his master what he has been directed to do, or as Mechem on Agency (Vol. 2, sec. 1875*) says: ' Any act which can fairly and reasonably be deemed to be an ordinary and natural incident or attribute of

---

*See 2d ed. § 1879.—[REP.

that act or a natural, direct and logical result of it.' The chauffeur had been directed to do a specific thing. He needed no assistance in doing that act, and if the intestate got into the car at his invitation, or with his permission, he was not acting within the scope of his authority, but contrary to express orders theretofore given. (*Rose* v. *Balfe*, 223 N. Y. 481.) When the owner of a private car sends his chauffeur on an errand, that does not give him authority to take into it a person casually met upon the highway."

And in *Goldberg* v. *Borden's Condensed Milk Co.* (227 N. Y. 465, 467), where a newsboy was invited by the defendant's driver, Huber, to take a ride, it was also said by Judge McLaughlin: " Huber had no authority to invite the plaintiff to ride; in fact he was acting contrary to express orders of his employer. When he gave the invitation he did an act outside the scope of his employment and the defendant was not responsible for the injuries caused by the driver's negligence while plaintiff was thus riding."

It is conceded by the appellant (Point I of brief) that " The law as to the responsibility of an employer for the negligent acts of the operator of its car is the same in New York and in Pennsylvania."

In *Hughes* v. *Murdoch S. & T. Co.* (269 Penn. St. 222, 223), where the defendant's truck driver permitted a fourteen-year-old boy to ride on his truck, the boy suffering injury while alighting, his claim being that the truck driver did not give him sufficient time to alight safely, the court say: " To sustain a recovery, under these circumstances, it should appear that the act of the driver, in permitting the boy to ride, was fairly within the scope of his employment. *Wind* v. *Steiert & Son*, 71 Pa. Superior Ct. 194; *Byrne* v. *Pittsburgh Brewing Co.*, 259 Pa. 357; *Scheel* v. *Shaw*, 60 Pa. Superior Ct. 73. If he so acted, the master owed a duty through his agent to see that no negligent act should happen that might injure the invitee. The test is not that, when the invitation was given he was engaged in the course of his employment in his master's business, but was the invitation or its consequences in furtherance of the master's business, so that it might be said to be impliedly within his authority? The master is bound by the acts of his servant in the course of his employment, but he is not bound by those outside of such employment. The servant (a truck driver) has no right to impose upon his master's onerous liability by holding him responsible for the safe carriage of any person he may see fit to accept as a passenger. Such persons, so invited or permitted to ride, should know of this obvious lack of authority from the position the man holds and the character of his employment. If there was some risk in riding, the passenger assumed whatever risk there was, as well as that which came from his alighting and leaving the truck. The

servant's duties were those of an ordinary driver of a truck, and at the time of the accident he was engaged in the performance of such duties. He had no implied authority to permit boys to ride on his truck, and acted beyond the scope of his employment when he did so. * * * None of the acts occurred in the execution or furtherance of the master's business. *Kiernan* v. *Ice Co.*, 74 N. J. L. 175; *Driscoll* v. *Scanlon*, 165 Mass. 348. The master was under no duty to take care of the boy by keeping him off the truck, nor liability for injuries resulting from his voluntarily leaving it."

The views stated in the last cited case were applied in other Pennsylvania cases (*D'Allesandro* v. *Bentivoglia*, 285 Penn. St. 72; *Zavodnick* v. *Rose & Son*, 297 id. 86; *Hartigan* v. *Public Ledger*, 291 id. 588), and no case in that State to the contrary is cited.

The appellant urges that under the rule in *Ferris* v. *Sterling* (214 N. Y. 249), where it was held that the license number of a motor car was *prima facie* proof of defendant's ownership as well as that the custodian of the car was engaged in the owner's service, a question of fact arose as to the liability of the defendant at bar because of its ownership of the car and the driving of it by Delmore, its employee; and that any evidence given by Edwards or Brockway, being that of employees in defendant's behalf, went no further than to present a question of fact as to their credibility, and that the finding of the jury established that the presumption arising from ownership and custody survived the evidence on behalf of the defendant. Even if such a view were permissible, and in my opinion it is not, there can be no question in this case as to the relation which the plaintiff bore to the defendant. On her own testimony that she was invited to ride by Delmore, with Edwards' permission, she established no relation of an invitee of the defendant. As to Delmore, and even as to Edwards, assuming that he had given the permission, she was an invitee; but I fail to see any relation other than that of a trespasser which she bore to the defendant. It may be said, in passing, that the rule in *Ferris* v. *Sterling* (*supra*) is to be applied in precisely that sort of a case. A question of fact is not presented, and " the presumption disappears " when the surrounding circumstances lead to the obvious conclusion that there was a departure by the servant from his duty as such. (*Fiocco* v. *Carver*, 234 N. Y. 219; *Fallon* v. *Swackhamer*, 226 id. 444.) It seems to me quite plain that there was nothing relating to this ride that had the slightest connection with the defendant's business. To hold a defendant in any case under the *respondeat superior* doctrine, it is essential that the servant's act be within the scope of his employment and in furtherance of his master's business. Neither Edwards nor Delmore, nor both together, could render the defendant liable

by the invitation to the plaintiff and her companions to become gratuitous guests or riders in this car. The ride had no connection with their work either directly or indirectly. A servant has no implied authority to make his master a carrier of passengers nor to charge his master with acquiescence in his unauthorized act. Hence, I am of the opinion that the dismissal of the complaint should be upheld.

The judgment should be affirmed, with costs, and the appeal from the so-called order " entered in the Clerk's Minutes " should be dismissed.

Present — LAZANSKY, P. J., KAPPER, CARSWELL, SCUDDER and TOMPKINS, JJ.

Judgment unanimously affirmed, with costs. The appeal from the so-called order " entered in the Clerk's Minutes " is dismissed.