MICHAEL NARDONE, as Executor, etc., of ANTHONY FANIZZI, Deceased, Respondent, v. THE MILTON FIRE DISTRICT, Appellant, Impleaded with FREDERICK J. THIELL, Defendant.

Third Department, April 30, 1941.

*Rusk & Rusk* [*George Rusk* and *George F. Kaufman* of counsel], for the appellant.

*Michael Nardone* [*Andrew J. Cook* of counsel], for the respondent.

FOSTER, J. Plaintiff's testate was killed while riding in a fire truck owned by the defendant fire district and operated at the time by one Thiell, chief of the local fire company. In this negli-

gence action against the district, submitted to the jury upon the theory of *respondeat superior*, plaintiff recovered a verdict of $16,063.30. From the judgment entered upon this verdict and the order denying the motion for a new trial the defendant district has appealed.

Appellant is a duly established fire district in the town of Marlborough, Ulster county. It maintains a fire house on Main street in the hamlet of Milton, and kept there the fire truck involved in this accident. The management and control of the district's property is vested in five elected fire commissioners. Within the district there was a separate organization known as the Milton Fire Engine Company, No. 1, which was a volunteer fire company. Thiell was chief of this company, and had been for a period of eleven years prior to the accident. It is undisputed that his duty was to take command at all fires and convention parades and also to inspect and test the fire truck at regular intervals.

Thiell testified that he seldom drove the truck to fires, but that when he did so other people, whom he could not identify, frequently jumped on the truck and rode with him. He also testified that when he took the truck on various occasions to test it others asked to ride with him and he permitted them to do so. The jury might have found from the evidence that this condition was known to at least some of the commissioners. There is some testimony that oral instructions had been given to him not to take the truck out of the district except by permission, but no other rules were ever made to govern or regulate the operation of the truck except that the commissioners had notified him in writing that it was to be used for fire purposes only.

The accident happened late in the afternoon of Sunday the 18th of June, 1939, ironically enough, a day commonly known as Father's Day. At the time the truck was being driven back from the hamlet of Marlborough, which is outside the limits of the fire district, but the accident itself happened within the district. According to Thiell, he was making a test trip, and went to Marlborough also for the purpose of endeavoring to find a piece of equipment lost at some fire. With him at the time were four other men, Hall, Eckerson, Alsdorf and the decedent, Fanizzi. Hall was a resident of Mount Vernon, N. Y., on a visit to Milton. Alsdorf resided at Milton and at one time had been a social member of the fire company, but it does not appear that he had any connection with the fire company at the time of the accident. Eckerson and the decedent lived at Milton, but apparently neither of them was in any way connected with the fire company.

The decedent operated a bar, grill and provision store. He was a friend and customer of Thiell's, who was in the ice business. The

weight of the testimony is that the whole party had been celebrating Father's Day, especially the decedent and Thiell. Shortly after one o'clock in the afternoon of that day Thiell went to the decedent's bar where both of them had a couple of glasses of beer. After that they went to decedent's home where they had lunch and some more beer. After leaving decedent's home they went back to the bar, and the testimony is conflicting as to whether they had anything more to drink there. Later they drove together to the residence of one Bunn, taking with them a bottle of Scotch whisky. Thiell says that he had nothing to drink at the home of Bunn, but the latter testified that they all had two drinks of the Scotch whisky. Apparently they left Bunn's house separately, but later Thiell paid another visit to the decedent's bar to supply some more ice, according to his version. There he met Hall, Eckerson and Alsdorf. After talking for some time, all of them, with the exception of the decedent, went over to the fire house to look at the truck. There Thiell told them that he was going to take the truck out for some test purpose and asked them if they cared to go along. As the truck was being driven by the decedent's place the latter came out and asked Thiell if he could join them, and Thiell acquiesced. After their arrival in Marlborough they visited a hotel where each of the party drank some more beer. Thiell says he first visited the local fire house there for the purpose of finding the lost equipment.

The trip back was a macaber ride of death. The record is convincing that the truck was driven in a completely reckless and dangerous manner. It traveled at a high rate of speed, and across the highway from one side to the other for a considerable distance. The siren was wide open. Innocent wayfarers hurriedly sought safety. The weight of the credible testimony is that the occupants of the truck were shouting and gesticulating in a manner which carried with it much more than the mere suggestion of a test run conducted in the interest of efficiency. The truck finally collided with another car, careened some distance and turned over, killing Fanizzi and Alsdorf, and injuring the other three occupants. Thiell was unable to give any coherent account of how or why the accident happened, except that he says in one place that Fanizzi grasped him around the waist, although he concedes he was already in trouble then, and at another place he says that the accelerator stuck. An examination of the truck by a mechanic, however, after the accident disclosed nothing whatever the matter with the accelerator. After the accident an autopsy was performed upon the body of Fanizzi, and, according to the testimony of the physician who performed the same, the decedent was intoxicated at the time of his death.

Under the circumstances outlined the judgment ought not to stand. We are not unmindful that it was the function of the jury to pass upon the purpose of the trip and to determine whether it was made in the service of the district. In our view, however, by far the greater weight of evidence indicates to the contrary. We may also add that the same degree of evidence denotes clearly that both Thiell and the decedent were not in possession of their normal faculties. If the latter chose to indulge in a festive expedition under conditions which must have been manifest to him we think he assumed the risk necessarily involved.

Assuming, however, that the purpose of the trip was legitimate, we still think that the record fails to disclose facts sufficient to sustain liability against the district. The men who accompanied Thiell were passengers, not assistants. He made no pretense whatever of claiming that he took them along to assist him in the performance of any duty, nor is there a shred of evidence elsewhere in the record to indicate that any of them were on the truck for any purpose except to ride. The district would be liable only if Thiell was acting in the discharge of his duty. (General Municipal Law, § 205-b.)

The statute erased any immunity formerly extended to fire districts and replaced it with the common-law rule of master and servant and the doctrine of *respondeat superior*. To hold the master liable under this doctrine it is essential to show that the servant was acting within the scope of his authority. A presumption may at times suffice, but not when the facts are in distinct opposition. (*Fiocco* v. *Carver*, 234 N. Y. 219.) Thiell was not acting in the discharge of any duty, nor within the scope of his authority, when he invited the decedent to ride on the truck or acquiesced in the latter's request to ride. (*Morris* v. *Brown*, 111 N. Y. 318; *Rolfe* v. *Hewitt*, 227 id. 486; *Clark* v. *Harnischfeger Sales Corporation*, 238 App. Div. 493; *Carroll* v. *City of Yonkers*, 193 id. 655.) The mere fact that Thiell had, to the knowledge of some of the commissioners, permitted people to ride on other occasions, the details of which do not clearly appear, does not justify a finding of authority in this case. Doubtless the district maintained no Gestapo, but we think that the unsuitability of a fire truck as a passenger vehicle is too obvious a fact to require elaboration and one which must be held to be known to every person of normal intelligence. Unfortunate as the accident may have been we find no basis either in law or fact for liability against the district.

The judgment and order should be reversed on the law and facts, without costs, and the complaint dismissed.

Hill, P. J., Crapser, Heffernan and Schenck, JJ., concur.

Judgment and order reversed on the law and facts and complaint dismissed, without costs.