MARJORY J. ROTH, Appellant-Respondent, v. J. N. ROTH & COMPANY, a Corporation, Appellant, AUBREY NEWTON CALVERT and KANSAS CITY STAR COMPANY, a Corporation, Respondents, No. 42710—253 S. W. (2d) 802.

Division One, December 31, 1952.

*John S. Marsalek* and *Moser, Marsalek, Carpenter, Cleary & Carter* for appellant.

*Everett Hullverson* for respondent-appellant Marjory Jacobs Roth on Her Appeal.

770

*Dearing & Matthes* and *Will B. Dearing* for respondents.

CONKLING, J.—Marjory J. Roth (hereinafter called "plaintiff") sued J. N. Roth & Company, a corporation (hereinafter called "Roth Corporation") and Aubrey Newton Calvert and the latter's employer, Kansas City Star Company, for $25,000 damages for personal injuries. Plaintiff recovered a verdict against Roth

Corporation for $15,000. The jury's verdict was also in favor of Calvert and Kansas City Star. Roth Corporation filed its motion for new trial. [804] Plaintiff filed her motion for new trial as against Calvert and Kansas City Star Company. The trial court ordered a $3,000 remittitur, which plaintiff made, entered a new judgment for $12,000 against Roth Corporation and overruled both motions. Roth Corporation appealed. Plaintiff appealed from the judgment in favor of Calvert and Kansas City Star.

On May 9, 1949, about 8:30 A. M., plaintiff was injured while riding south in the front seat of a Packard automobile driven by her husband, J. N. Roth, on Highway 54 just south of Holts Summit, a small village in Callaway County, Missouri. The concrete highway ran north and south and was 20 feet wide. Plaintiff and her husband had that morning driven from their home in St. Louis and were on their way to Jefferson City. Martha Seivers, plaintiff's cousin, whom plaintiff had invited to go along, was riding alone in the rear seat. A short distance down hill just immediately south of Holts Summit, and leading west from the highway, there was a 20 foot wide gravel country lane. Defendant Calvert, operating an automobile for his employer, was driving north on the east side of Highway 54 and approaching the point where the above lane entered into Highway 54. Calvert testified the country lane entered Highway 54 at a point 150 feet south of the top of the hill, but disinterested witnesses testified that such distance was 300 to 350 feet.

As the two automobiles approached the lane from opposite directions and were near to each other, Calvert, to enter the country lane and go west, and without signaling his intention to do so or reducing speed, turned sharply to his left across the west side of the highway in front of the Roth car which was running south on the west side of the highway. The different witnesses variously estimated that the two cars were 40 to 50, or 50, or 75, or 90 to 100 feet apart when the Calvert car started to turn left. The two motor cars did not collide or touch each other. Roth swerved to his left to avoid the collision and the Roth car passed within two feet, or less, of the right rear corner of the Calvert car as that corner was close to the highway centerline going west to enter the country lane. Tire marks on the pavement caused by the application of the brakes on the Roth car began "around 75 or 100 feet" south of the crest or top of the hill and led south to that car. The Roth car, in passing east of the Calvert car, skidded on mud on the highway ran off the east side of the highway and into an embankment east of the highway a little south of the country lane, and caused plaintiff's injuries. Signs erected along the highway on each side of Holts Summit by the State Highway Department bore the legends, "Slow to 35 miles an hour," and "Holts Summit," and "School Zone."

We first consider the appeal of Roth Corporation. Under plaintiff's instruction I her case was submitted as against Roth Corporation upon the theory that Mr. Roth was negligent in operating the automobile at a speed in excess of 50 miles per hour. No question is here raised that the evidence does not support that particular theory of submission *as to the negligence* alleged and proved. Roth Corporation does contend, however, that the court erred in submitting the case to the jury at all as against Roth Corporation because the act of plaintiff's husband, in inviting plaintiff to accompany him on the business trip, was wholly a personal matter between them and her presence in the car served no interest of Roth Corporation and had nothing to do with Roth Corporation's business; that while plaintiff may have been an invitee of her husband in his personal capacity she was not an invitee of Roth Corporation; that since the act of a corporation officer binds the corporation only when the act is one performed in the corporation's business and in furtherance of its interests, the invitation of a corporation officer to another (even to such officer's wife) to ride in an automobile operated upon the corporation's business does not bind the corporation; and that therefore the duty owed to plaintiff by Roth Corporation while in the car in this case must be measured by the rules relating to trespassers. This contention requires a statement of certain other facts appearing in the transcript.

Roth Corporation's business is the sale of hospital and hotel furniture and supplies, and plaintiff's husband, J. N. Roth, is its president. Its business did not include the transportation of persons by automobile as either passengers or guests. Its place of business is in St. Louis. During the noon hour, when the office girl in Roth Corporation's office was out to lunch, plaintiff stayed in that office. For that hour per day she was paid $15.00 per week. The Packard automobile in question was the personal property of J. N. Roth and the title was in his name. On the morning in question he used that automobile to drive to Jefferson City upon a business trip for Roth Corporation. Roth testified: "Q. How did your wife happen to go along with you? A. Well, my wife didn't have anything to do, and I asked her if she just wanted to take a ride with me as I had some business to do in Jefferson City and she several times mentioned she would like to see the penitentiary and I told her, well, she can come along but I won't have any time for her, so she says, 'Well, can I invite someone else?' I says, 'Go ahead and invite someone else, and she invited her cousin, Martha Seivers.' * * * Q. They didn't go along for any business purpose whatever? A. No. Q. But merely as a personal mission on their part? A. Yes. Q. So it was an entirely personal matter with you they rode along? A. Entirely personal. Q. Didn't have anything to do with your business whatever? A. None whatever. * * * Q. And did you tell me the

purpose of your going to Jefferson City? A. There was a bid open in the State Purchasing Department at that time, and they open in the morning, and I generally attend those myself instead of sending one of my assistants. Q. Where was this bid and what was it for? A. I think it was for one of the state hospitals for a lot of furniture.'' Plaintiff testified: ''Q. How did you happen to be along with your husband on the ride to Jefferson City? A. Well he was going on the trip and he asked me if I would like to go along for the ride, and I said 'Yes, I would,' and then I asked him if I could take someone else along because he was going to be busy all day. He said 'Yes,' and I invited my cousin to go with me.''

Plaintiff argues that ''Mr. Roth's car was being used for two purposes: the business of the company and the 'purely personal pleasure purposes of both Mr. and Mrs. Roth and her cousin.'' The evidence does not support that argument. It would not rule the question for plaintiff if that were true. The trip was being made because Roth Corporation had business in Jefferson City. The president of Roth Corporation determined that he would attend to that business and make the trip himself. Except for that fact the trip would not have been made. Being under the compulsion of the business trip, and having determined to use his own personal car for the trip to attend to the Corporation's business, Roth ''asked her if she just wanted to take a ride with me as I had some business to do in Jefferson City.'' The evidence clearly establishes that taking plaintiff along for the ''ride'' was just an afterthought and was not one of the purposes of the trip.

The theory upon which plaintiff seeks to hold Roth Corporation liable to her is that Mr. Roth at the time of the accident was in charge of and operating his car for and ''on behalf of defendant J. N. Roth & Company, and that the same was being operated by and through its (Roth Corporation's) agent and servant.'' And it is conceded that Roth's operation of the automobile on the trip was on the Corporation's business. The determination of Mr. Roth, as owner of the automobile in question, to use his personal motor car to himself make a business trip for the Corporation of which he was president, was something which Mr. Roth of course had a right to do. It was his automobile. But when he did so, and started on the trip, the trip being one exclusively for the [806] benefit of the Corporation, the Roth Corporation became a gratuitous bailee of the automobile. Roth Corporation was paying no consideration for the use of the automobile but was receiving the use of it merely because the owner (its president) had determined to that day devote his personal automobile to the Corporation's use, and to corporate purposes. The Roth Corporation, as bailee of the automobile, was using the car in its exclusive business in the actual personal control of its agent.

The question before us reduces itself to this: In asking plaintiff "to take a ride with me as I had some business to do in Jefferson City" was Roth Corporation's agent (here the president) acting within the scope of his employment, or, did he have the ostensible, apparent or implied authority of the Corporation to invite plaintiff "to take a ride" in the Corporation's automobile on its business trip, and to thus bind the Corporation by such invitation under these circumstances to accept plaintiff as a guest and to exercise toward plaintiff the highest degree of care as submitted in plaintiff's instruction I?

We consider the powers of the president of a corporation. In 13 Am. Juris., Corporations, § 898, p. 878, it is stated that: "Within the scope of his duties as head of the corporation and in the performance of all acts of an ordinary nature which may fairly be deemed incidental to the administration of the office he holds, the president may act without the direct or special authority of the board of directors. Nevertheless, the president of a corporation when acting for it is merely its agent and cannot act so as to bind it beyond the scope of his authority. The fact that he owns a majority of the corporate stock or holds the power of domination of the corporation does not itself vest him with any additional authority." In 19 C. J. S., Corporations, § 752, pp. 97, 98, it is stated of the president of a corporation that "He is without power to do an act which is beyond the objects and purposes of the corporation," etc.

In 2 Fletcher, Cyclopedia Corporations, Perm. Ed., § 592, p. 467, et seq., it is said: "The authority of a corporate president is limited in any case to acts within the ordinary course of business (of the corporation) and thus within the apparent scope of his authority, and does not include acts for his personal benefit, of the president, or extraordinary or unusual transactions. * * * Even if the president be deemed to have power to act in behalf of the corporation, or there is a presumption in favor of his authority, the power does not extend to acts outside of the ordinary course of business (of the corporation) nor to acts merely for his own benefit. * * * Nor is the corporation bound by the acts of the president where the principal is in no way interested, but the transaction is a personal one of the president." See also, Sparks v. The Dispatch Transfer Co., 104 Mo. 531, 15 S. W. 417, Concrete & Steel Const. Co. v. National Asphalt Refining Co., Mo. App. 2 S. W. (2) 157, Stevens Davis Co. v. Sid's Petroleum Co., Mo. App. 157 S. W. (2) 246, Josephine Hospital Corporation v. Modoc Realty Co., 307 Mo. 336, 270 S. W. 638, Electronic Development Co. v. Robson, 148 Neb. 526, 28 N.W. (2) 130, C. G. Kershaw Contracting Co. v. Cascade Corporation, 224 Ala. 116, 138 Sou. 815, Leach v. Peoples Savings Bank, 200 Iowa, 954, 205 N. W. 790, Logan v. Fidelity-Phenix Fire Ins. Co., 146 N. Y. Supp. 678, Leigh v. The American Brake-Beam Co., 205 Ill. 147, 68 N. E. 713.

The usual or ordinary course of business of a corporation clearly cannot extend beyond the general scope of the corporation's business nor include acts which are beyond the corporate objects and purposes. For instance, if a corporation is organized to manufacture railroad appliances and pay its earnings as dividends to its shareholders, its president has no power to bind the corporation by a loan of the corporate funds, or, if a corporation be organized to operate a gasoline and oil filling station business its president cannot bind the corporation by inviting persons to become passengers or guests for transportation in one of the corporation's automobiles merely to take "a ride."

In Shumake v. Basic Metals Min. Corp., 235 Mo. App. 214, 129 S. W. (2) 36, 41, 42, the court states that if the authority of the [807] president there in issue existed it was to "* * * be derived from his implied power as the chief executive officer of the corporation to perform any and all acts of an ordinary nature which, by usage and necessity, were incident to his office, and to bind the corporation * * * in matters arising in the usual and ordinary course of the corporation's business." etc. In Bacon Piano Co. v. Medcalf Jewelry and Music Co., 225 Mo. App. 463, 40 S. W. (2) 762, 763, the court said: "* * * Mr. Smith, as president and general manager, of the corporation, had authority as such officer to do any and all acts that were within the general scope of business of the corporation, *but he could go no further than that.*" [Emphasis ours] See also, Fair Mercantile Co. v. Union-May Stern Co., 359 Mo. 385, 221 S. W. (2) 751, and Missouri cases collected in 2 Fletcher, Cyclopedia Corporations, Perm. Ed., p. 456.

In Wigginton Studio, Inc. v. Reuters Adm'r., 254 Ky. 128, 71 S. W. (2) 14, Miss Adams, the vice president of the Wigginton corporation, and at the time in exclusive charge of the corporation's affairs, was going on a business trip for the corporation in the automobile of another employee which had been left in her care for use in the business of the studio. Miss Adams invited decedent (Mrs. Reuter) to go along on the corporation's business trip for the ride. On the trip Mrs. Reuter was killed. It was sought to hold the corporation liable. The court said: "It is our conclusion that Mrs. Reuter was only an invitee of Miss Adams * * * and, therefore, the question for determination is whether or not Miss Adams' position as vice president of the studio corporation and being in charge of its business, had any more binding effect on the corporation with respect to an invitee, than if Miss Adams had only been a servant or other employee. The rule is well settled in this jurisdiction that a servant has no implied authority to invite or permit a third person to ride on a vehicle in his charge and if, in so doing, the invitee sustains injuries through negligence of the servant, the master will not be liable, as the servant is not acting within the scope of his

authority. * * * But it is argued for appellee that Miss Adams was not a mere servant or employee of the corporation and that by virtue of her authority as vice president and being in charge of the corporation's business, her acts were binding on the corporation and, therefore, Mrs. Reuter, the deceased, was an invitee of the corporation. To this contention we cannot agree. An officer of a corporation, when rendering services for the corporation, is an employee or servant of the corporation and the fact that he is an officer or a stockholder gives him no more authority to bind the corporation than any other employee has to render his principal liable for his acts. * * * The above rule of law was adhered to by this court in the case of Louisville Lozier Co. v. Sallee, 167 Ky. 499, 180 S. W. 841, wherein we held that in order for a company to be held responsible for the tort of one of its officers he must be acting within the scope of his employment and in the furtherance of the corporation's business. It is our conclusion that Miss Adams acted beyond the scope of her authority as an employee of the corporation and that the corporation is not responsible for her acts and the trial court erred in not sustaining appellant's motion for a directed verdict in its favor.''

In Koch's Adm'r., v. Koch Bros., Inc., 274 Ky. 640, 119 S. W. (2) 1116, the stock of the defendant coal and construction corporation was owned by Clarence Koch, his brother Clifford Koch, and their wives. Clarence Koch was its president. He ordered an employee of the corporation to take one of the corporation's trucks and make a business trip to Louisville. He gave his daughter, Lucille Koch, and other children, permission to go along for the ride in the truck. On the trip Lucille Koch was killed, due to the negligence of the truck driver. Recovery was not permitted against the corporation. The court said: ''The action is predicated on the theory that Clarence Koch had authority to bind the corporation by permitting his daughter to ride on the truck, and that the corporation therefore is liable for her death caused by the negligence of its employee. The deceased was not on the truck in furtherance of any corporate business. She [808] was, at most, merely a licensee. * * * It is a well-established principle that the master is not liable for the acts of his servant which are not done in furtherance of the master's business and within the apparent scope of the servant's authority. The agent, servant, or employee of the owner of an automobile has no implied authority to invite children to ride in it.''

In Natell v. Taylor-Fichter Steel Const. Company, 15 N. Y. Supp. (2) 327, the vice president and secretary of the corporation (Mr. Fichter) was in personal charge of building two bridges for the corporation at North Towanda. He was returning to the corporation's offices in New York and had invited the 14 year old Natell boy to ride with him. On that trip the minor was injured. In deny-

ing recovery against the corporation, the court in part said: "In addition, the act of Fichter in inviting the plaintiff to ride in his automobile was clearly without the scope of his duties as an officer of the corporation." In Clark v. H. Sales Corporation, 264 N. Y. Supp. 873, 238 App. Div. 493, the corporation's manager directed an employee to drive three persons in a corporation automobile. In denying recovery as against the corporation for the injuries of one of them, the court in part said: "It seems to me quite plain that there was nothing relating to this ride that had the slightest connection with the defendant's business. To hold a defendant in any case under the respondeat superior doctrine, it is essential that the servant's act be within the scope of his employment and in furtherance of his master's business. Neither Edwards nor Delmore, nor both together, could render the defendant liable by the invitation to the plaintiff and her companions to become gratuitous guests or riders in this car. The ride had no connection with their work either directly or indirectly. A servant has no implied authority to make his master a carrier of passengers nor to charge his master with acquiescence in his unauthorized act." Authorities could be multiplied.

Plaintiff contends at length in her brief that Mr. Roth, as president, had implied and ostensible or apparent authority by his invitation to her to bind the Corporation and thereby give her guest status in the automobile, and thus require the Corporation's exercise of the highest degree of care toward plaintiff. The contentions made and the cases cited by plaintiff have all been carefully considered and examined. They are not in point and limitations upon space forbid their analysis here. But plaintiff's contentions all seem based upon her argument that even under these circumstances a husband may bind his employer by his invitation to his wife to accompany him upon any trip at any time; or, that because he was president of Roth Corporation, Mr. Roth was of course within the scope of his employment, and of necessity had the implied authority to bind Roth Corporation by merely extending plaintiff the instant invitation; or, that the corporation, having clothed Roth with the title of president, is in effect estopped to deny he did not have authority to bind the corporation by his invitation. Those contentions are without merit, and have all been hereinabove answered.

We think it is clear that Roth Corporation could not owe plaintiff the highest degree of care unless Mr. Roth extended the instant invitation in his official capacity as president, and not merely as plaintiff's husband. As shown above Mr. Roth was without any authority to extend the instant invitation in his official capacity. And he testified his invitation was wholly personal. Clearly it is not within the scope of the corporate purposes to promote the pleasure of the wives of the stockholders or officers of a corporation. And

778

Mr. Roth was merely giving plaintiff a ride for her entertainment and pleasure.

Not even a corporation president has ostensible corporate authority to do an act beyond a corporation's purposes and objects. Our research reveals that the cases supporting the liability of a master upon the theory of the ostensible authority of a servant or agent to extend an invitation seem limited to those where the master was a common carrier whose business was that of carrying passengers.

While it may be presumed that an act pertaining to a corporation's ordinary business when performed by its president is legally done and binds the corporation, yet no such presumption exists when the act of the president does not fall within the scope of the powers conferred upon him and usually exercised by him as a part of the ordinary business of the corporation *and* within its corporate objects and purposes. Merely being president of a corporation carries no inherent power outside of a comparatively narrow circumference enclosing the ordinary functions of such an office, and certainly not beyond the corporate objects and purposes.

It has long been the rule in Missouri that an employee driving an automobile upon the business of his employer, if the scope of his employment does not include the transportation of persons as passengers or guests, that there is no implied or apparent authority to invite others to ride with him, and the employee cannot render his employer liable by the mere *negligent* operation of the automobile which results in injury to one whom he has invited to ride. Berry v. City of Springfield, Mo. Sup. 13 S. W. (2) 552, 553, Bobos v. Krey Packing Co., 317 Mo. 108, 115, 296 S. W. 157, Metropolitan Life Ins. Co. v. Gosney, (8th Cir.) 101 Fed. (2) 167. And that rule is equally applicable under the instant facts. That plaintiff was invited to ride by her husband, who was president of Roth Corporation, cannot destroy the force of the reasoning applicable to the instant facts. There seems no doubt that as to her husband in his personal capacity only, plaintiff was an invitee. But she was not an invitee of Roth Corporation.

From our conclusions above it follows that in the instant operation of the automobile the Roth Corporation did not owe plaintiff the highest degree of care as stated in plaintiff's instruction I, and that plaintiff was *not* a passenger in Roth Corporation's automobile as submitted by plaintiff in her instruction V. On the contrary, in these circumstances plaintiff could recover from Roth Corporation only in the event its agent was guilty of wilful, wanton or reckless conduct toward her. Berry v. City of Springfield, supra, and Bobos v. Krey Packing Co., supra, 60 C. J. S., Motor Vehicles, § 399(2)c, p. 988, and cases cited. See also, Shrimplin v. Simmons Auto Co., 122 W. Va. 248, 9 S. E. (2) 49, Cunningham v. Bell, 149 Ohio St. 103, 77 N. E. (2) 918, Struble v. Bell, 126 N. J. L. 168, 17

Atl. (2) 800, and cases cited, 4 Blashfield Cyclopedia of Automobile Law and Practice, § 2296, p. 340.

Plaintiff testified that her husband was driving about 50 miles per hour; that each automobile was on its own proper side of the highway approaching the other car, and approaching the country lane; that the Roth Corporation car was 40 or 50 feet from the Calvert car when Calvert, without signaling his intention to do so or slowing down, made a very sudden turn west across the highway, moving directly in front of the oncoming Roth Corporation automobile; that her husband applied the brakes and turned to the east side of the highway to pass behind the Calvert car. She also testified: "Q. You made no complaint, then, to him (Mr. Roth) about the way he was driving or anything at that time, did you? A. Oh, no. Q. You didn't see anything to complain about, did you? A. No, I did not."

It is apparent from her own above testimony that plaintiff may not recover against Roth Corporation upon the theory that Roth Corporation was guilty of wilful, wanton or reckless conduct toward her. We must necessarily conclude from all of the above that the trial court erred in refusing to direct a verdict in favor of Roth Corporation. And we so rule.

After the submission of this cause in this court, plaintiff Marjory J. Roth filed here her written dismissal of her appeal from the judgment of the circuit court in favor of Calvert and Kansas City Star. Upon such written dismissal plaintiff's appeal from that judgment is accordingly dismissed. The judgment of the circuit court in favor of plaintiff and against J. N. Roth & Company, a Corporation, is reversed. It is so ordered. All concur.