**Anthony Frank ACCURSO, by his next friend, Peggy V. Accurso, Appellant,**

v.

**Tony ACCURSO, doing business as Central Ice Company, Respondent.**

No. 23179.

Kansas City Court of Appeals.

Missouri.

Dec. 5, 1960.

Harold T. Van Dyke, Roger J. Walsh, Kansas City, for appellant.

E. E. Thompson, Kansas City, for respondent.

BROADDUS, Judge.

This is an action for damages for personal injuries. There was a verdict and judgment in favor of plaintiff for $10,000. Defendant's motion to set aside said judgment and to enter judgment for defendant was sustained. Plaintiff appealed.

The ground assigned by the trial court for sustaining defendant's motion was that "defendant's employee was without authority to invite the plaintiff to ride in defendant's truck on the occasion in question, but that plaintiff was riding therein without right or authority of defendant, and without knowledge or permission of defendant."

We have jurisdiction of this appeal. Sect. 477.040 V.A.M.S. as amended, Laws of 1959, effective January 1, 1960.

In July 1953, the defendant, Walter Tony Accurso, was doing business as the Central Ice Company in partnership with his brother, Frank Accurso. Defendant was the manager of the business. Defendant's son, Tony Accurso, worked for him as a driver, running hot-shot deliveries, or special deliveries. On July 21, 1953, defendant's son, Tony, was making a delivery of ice to the Starlight Theatre in Swope Park, driving a truck that belonged to the partnership.

On July 21, 1953, plaintiff's cousin, Tony, called Tony Boy, came by the house and asked plaintiff if he wanted to go out to the Starlight Theatre to deliver ice, and he went with Tony Boy. They drove south on Prospect Avenue at from 25 to 35 miles per hour, a little more or a little less either way. They stopped at the stop signal at Linwood Boulevard, and then proceeded south going about the same as before, 25 to 35. There was an old model Chevrolet ahead of them, and they were following about 10 to 15 feet behind it. In the 3400 block, they were in a lane of traffic close to the center of the street, when the Chevrolet ahead just came to a quick stop, and Tony Boy, the driver of the truck, crossed into the lane for northbound traffic, to the left of the Chevrolet. There was oncoming traffic about 20 to 30 yards ahead and after the truck passed the Chevrolet, Tony Boy swung back to his right, and to his own side of the street. As the driver was swinging the truck back, the left door of the truck came open, and as he was making a sharp right turn or curve, he slid off the seat and partly out of the cab. He was hanging onto the steering wheel, with his left foot on the running board and his right foot on the brake. He was hanging onto the steering wheel with one hand and the truck collided with the utility pole.

When the truck hit the pole, plaintiff was tossed against the dashboard and against the windshield, and bounced back into the seat. The driver, Tony Boy, was thrown from the truck. Plaintiff was dazed.

■ As to plaintiff's status at the time of the accident, the evidence shows:

Walter Accurso, sole defendant in the instant case, and sued under the name of Tony Accurso, d/b/a Central Ice Co., is one of the partners of the Central Ice Company and the manager of the business. He is the father of Anthony Joseph Accurso, referred to in many instances as "Tony Boy". He is the uncle of the plaintiff, Anthony Frank Accurso. The other partner in the ice company is the defendant's brother, Frank Accurso, the latter being the father of the plaintiff.

Tony Boy was an employee of Central Ice Company and was the driver of the truck involved in the accident in question, sustaining injuries from which he died on July 27, 1953.

The defendant testified that he knew only by hearsay of the plaintiff having ridden on the truck before the day of the accident, but he never at any time gave his son permission to allow plaintiff to ride on the truck. Tony Boy, the driver of the truck, never asked permission for his cousin, the plaintiff, to ride on the truck, and the defendant never gave him permission. Tony Boy did it on his own. He never did tell his son, Tony Boy, not to do it. He did not know that plaintiff was on the truck at the time of the accident. He had not been consulted about it. He had never given his permission to ride on the truck. He had never been asked for such permission. As to the number of times plaintiff had ridden on the truck before this occasion, defendant testified: "Maybe once, maybe twice, I don't know."

Defendant further testified that on any occasion upon which plaintiff might have ridden on the truck he did not have to do anything for defendant's business. He did not invite him to ride on this particular day; his son, Tony Boy, the driver, didn't have a helper on the truck for this delivery; he didn't need one; he took care of the ice delivery by himself. The plain-

tiff had ridden with Tony Boy on one or two prior occasions without his knowledge or permission. Defendant never told his son not to take the plaintiff along. He didn't tell him not to; he didn't tell him anything.

Anthony Frank Accurso, the plaintiff, testified that prior to July 21, 1953, the date of the accident, he had ridden on the truck at least once or twice. On those occasions he had gone to the Starlight Theatre with Tony Boy to deliver ice. He had ridden on other occasions in this truck with Tony Boy: "There were a few times that we made one or two other stops. I think one time before we made one other stop before we went to the Starlight." Plaintiff testified that he could not recall his father, Frank Accurso, being present when he, the plaintiff, rode on the truck with his cousin, Tony Boy.

On July 21, 1953, plaintiff's cousin, Tony Boy, came to the house and picked him up and asked him if he wanted to go to the Starlight Theatre with him to deliver ice and that he went with him. He got into the truck at his home, solely upon the invitation of his cousin, Tony Boy. Plaintiff was going on that trip merely for the ride. He had no intention of doing anything for the Central Ice Company. He didn't know he was going on this trip until the truck came by and his cousin invited him to go for the ride. He had not talked with his father about going on this trip.

Frank Accurso, the other partner in the business, testified that he left the management of the business to his brother, the defendant. Frank Accurso also testified he would occasionally help in the business; that he took an active part in the Central Ice Company only when there was a shortage of help. Sometimes he would make special deliveries. On several occasions prior to July 21, 1953, he had taken his son, Anthony Frank, the plaintiff, with him on the truck; his nephew, Tony Boy was employed by the firm to deliver ice and he drove one of the trucks in making these deliveries. It was his duty to take the ice out to the Starlight Theatre. On at least one or more prior occasions, before July 21, 1953, he knew that his son had ridden on the truck with Tony Boy. He didn't know the plaintiff was with Tony Boy on this occasion. As to authorizing his son to ride with Tony Boy, he said, "I didn't tell him to, I didn't tell him not to." He had not talked to him about it.

In our opinion the trial court properly sustained defendant's motion for judgment. In the case of Bobos v. Krey Packing Co., 317 Mo. 108, 296 S.W. 157, the plaintiff was riding in a truck of the defendants at the invitation of the driver, when he was injured, but having based his cause of action upon the theory that the driver of the truck was guilty of willful, wanton and reckless negligence, the court held that the evidence supported the charge. However, in declaring the law as to persons riding in vehicles, upon a similar invitation, the court said, 296 S.W. loc. cit. 159(2, 3):

> "* * * It is of course well settled that a servant has no implied authority to invite third persons to ride upon a vehicle in his charge; that, unless the master has *expressly* authorized the issuance of such an invitation or the granting of such permission, the servant's act in so doing is not a mere deviation from instructions, but a complete abandonment of the master's business; that a person so riding upon the vehicle is an invitee as to the servant, but a trespasser as to the master; and that the master cannot be subjected to liability for an injury to the servant's invitee unless the act of the servant which caused the injury was committed while he was acting within the scope of his employment." (Emphasis ours.)

The case of Roth v. J. N. Roth & Co., 363 Mo. 767, 253 S.W.2d 802, conclusively

rules the instant case. Mr. Roth, the president of J. N. Roth & Company, finding it necessary to take a business trip on behalf of the company from St. Louis to Jefferson City, decided to drive in his private car, and invited his wife to accompany him. En route, she was injured in a collision and sued the corporation. At loc. cit. 806 of 253 S.W.2d, the court poses this question:

"The question before us reduces itself to this: In asking plaintiff 'to take a ride with me as I had some business to do in Jefferson City' was Roth Corporation's agent (here the president) acting within the scope of his employment, or, did he have the ostensible, apparent or implied authority of the Corporation to invite plaintiff 'to take a ride' in the Corporation's automobile on its business trip, and to thus bind the Corporation by such invitation under these circumstances to accept plaintiff as a guest and to exercise toward plaintiff the highest degree of care as submitted in plaintiff's instruction I?"

In answering the question, the court said, loc. cit. 808:

"We think it is clear that Roth Corporation could not owe plaintiff the highest degree of care unless Mr. Roth extended the instant invitation in his official capacity as president, and not merely as plaintiff's husband. As shown above Mr. Roth was without any authority to extend the instant invitation in his official capacity. And he testified his invitation was wholly personal. * * * And Mr. Roth was merely giving plaintiff a ride for her entertainment and pleasure."

In denying recovery, the court further said, loc. cit. 809(7):

"It has long been the rule in Missouri that an employee driving an automobile upon the business of his employer, if the scope of his employment does not include the transportation of persons as passengers or guests, that there is no implied or apparent authority to invite others to ride with him, and the employee cannot render his employer liable by the mere *negligent* operation of the automobile which results in injury to one whom he has invited to ride."

As to the defendant, the plaintiff was a trespasser.

In Berry v. City of Springfield, Mo., 13 S.W.2d 552, loc. cit. 553, when passing upon a similar set of facts, the court said:

"By the petition the plaintiff was riding on the truck at the invitation of the defendants. It does not appear who extended the invitation on behalf of the city. We infer plaintiff concluded the invitation of defendant Wade was also an invitation of the city. Wade was not employed to transport people about the city; hence, an invitation to ride was beyond the scope of his employment. It follows the plaintiff in riding on the truck was a trespasser as to the city."

The evidence shows that Tony Boy was a truck driver for the firm and it was his duty to make special deliveries. He was making a delivery of ice to the Starlight Theatre at the time of the accident. The truck was used only for delivery of ice. The plaintiff was not an employee of the firm in any sense. He had no duties whatsoever to perform in connection with this delivery of ice. In short, Tony Boy was employed to deliver ice, not to carry passengers.

The Missouri cases cited by appellant are not in conflict with our present hold-

*ing.* In *Globe Indemnity Co. v. First National Bank,* Mo.App., 133 S.W.2d 1066, a bank clerk with authority to execute checks fraudulently endorsed some checks in the name of a fictitious payee. The Bank was held liable under the doctrine of agency. This decision, in view of the facts involved in the instant case, does not aid appellant.

In the case of *Dinger v. Burnham,* 360 Mo. 465, 228 S.W.2d 696, a minor was driving the automobile at the *direction* of his mother who did not know how to drive an automobile.

*Leidy v. Taliaferro,* Mo.Sup., 260 S.W. 2d 504. The crux of this case may be found in the recital of the conversation appearing on page 506. The conversation discloses an *express authority* by Mr. Taliaferro, an individual, the sole principal, for his agent Leidy to take his son on the trip to Oklahoma.

In *Daugherty v. Spuck Iron & Foundry Co.,* Mo.App., 175 S.W.2d 45, it appears that the plaintiff drove a truck to defendant's foundry to have castings loaded thereon which he was to haul to another destination. He was requested by the foreman of the foundry to help load some of the castings into the truck. He complied and was injured. It was the foreman's duty to get the castings loaded and the plaintiff's duty to get them hauled. His purpose on the premises "was * * * lawful [and] of mutual interest to both." The court held that in requesting the plaintiff to help load the castings the foreman was in the scope of his employment and had apparent authority to act as he did. This decision is not helpful to appellant. He went along with his cousin for the ride, with no intention of helping deliver the ice and of no necessity for him to help.

The judgment is affirmed. All concur.